JAMES M. FIELDS, for use, etc., plaintiff in error, vs. JOSEPH WILLINGHAM et al., defendants in error.

1. F. owning certain mills, sold, in September, 1860, one-half interest therein, with all necessary water privileges, to W. and C. for $7,444 00, with warranty. The deed was duly recorded. In November, 1861, W. and C. reconveyed the same, with warranty, to F. for $8,500 00. In January, 1867, F. sold one-half of said mills to T., and in January, 1868, at United States Marshal's sale, under execution against F., T. and E. purchased the other half. When F. sold to W. and C., and

Fields *vs.* Willingham *et al.*

when the reconveyance was executed by them to him, the water, on account of the mill-dam, was backed upon and overflowed the land of W. and C., and also land owned by other persons. The latter, by legal proceedings in 1872, caused the dam to be taken down, thereby impairing the value of the property. For this, as a breach of the warranty of W. and C., an action of covenant was brought:

*Held*, That as the warranties in the respective deeds of F. and of W. and C. were substantially the same, although the latter deed was for a larger consideration than the former, F. would not be entitled to recover for a breach of the warranty of W. and C. for a cause existing at the time F. made his warranty.

2. Subsequent vendees holding under F., whether purchasing at public or private sale, are affected by the equities existing between F. and W. and C., especially if they had notice of the facts upon which those equities are founded.

Warranty. Covenant. Vendor and purchaser. Before Judge HARVEY. Gordon Superior Court. February Term, 1873.

James M. Fields, for the use of Elias E. Fields, Lewis Tumlin and Samuel Pulliam, brought an action for breach of covenant against Joseph Willingham, and James A. Cantrell and George W. Collier, as administrators of Merideth Collier, deceased, laying his damages at $12,000 00. The declaration made this case :

On November 4th, 1861, Joseph Willingham and Merideth Collier, then in life, made and delivered to plaintiff their deed of that date, by which it was witnessed that said Joseph and Merideth, in consideration of $8,500 00 to them paid by plaintiff, sold and conveyed to him, his heirs and assigns, the one-half interest in ten acres of lot of land number sixty-six, of the seventh district and third section of Gordon county, together with one-half interest in the Salaquoy Mills, located on said parcel of land, with the right to water privileges, the same as were then enjoyed, and the said Joseph and Merideth, for themselves, their heirs, executors and administrators, the said bargained premises, unto plaintiff, his heirs and assigns, did forever warrant against themselves and against the claims. of all other persons whomsoever.

Plaintiff alleges a breach of said warranty, in this, that

Robert H. Nesbit and William A. Nesbit, by a judgment of the Superior Court of said county, had the mill dam on said ten acres torn down, and the water let off and reduced seven feet in height, because the water, at its height when said deed was made, backed upon and overflowed the lands of the said Nesbits, so that said mill and land have become wholly worthless. Plaintiff shows that said defendants not only had full notice of said legal proceedings, and of a bill for injunction filed against plaintiff and others for obstructing the Conesauga river by the dam of said mill, but aided and actively assisted in having said dam taken down and said mill property ruined.

Amongst other defenses, the defendants pleaded that no consideration was paid to them by said plaintiff for said deed; that, on September 3d, 1860, said plaintiff represented to defendant, Willingham, and Merideth Collier, deceased, that said mill property was very valuable, that he had a valid title to the same, and to all the water privileges necessary to the successful operation of said mill, and thus induced them to make a purchase of the one undivided half interest in said property, giving therefor their notes in the aggregate amount of $7,544, he making to them a warranty deed to the same; that it was agreed between the parties to said purchase that said Collier and Willingham should have two years to determine whether they would hold said interest or not, during which period they should have the right to reconvey, taking up said notes; that the trade was, in fact, rescinded by said Collier and Willingham taking up their notes and executing the deed set forth in the declaration; that the increased consideration mentioned in the last deed was no part of the inducement for executing the same, but represented other moneys that had become due to Willingham and Collier from the plaintiff between the time of the trade and the rescission thereof; that the height of the water, at the time of the execution of the deed to the plaintiff, was the same as it was at the time said plaintiff conveyed to Collier and Willingham; that the understanding and contract was that they were to convey back said property with the same rights and privileges as were conveyed to them.

The plaintiff made out a *prima facie* case, as stated in his declaration. The defendants showed the conveyance of the undivided half interest in the mill property to them, as stated in their plea, to-wit: on September 3d, 1860. Also, a conveyance from said plaintiff to Lewis Tumlin of an undivided half interest in said property, dated January 12th, 1867. Also, a deed from the United States deputy marshal, conveying an undivided half interest in said property to Elias E. Field and Lewis Tumlin, of date January 7th, 1868. This instrument was made in accordance with a sale of said interest, under an execution issuing from the District Court of the United States for the Northern District of Georgia.

The defendant, Willingham, testified substantially to the facts as stated in the plea. He explained the difference between the considerations expressed in the two deeds as follows:

At the time of the rescission of said sale, plaintiff sent for defendant and Collier to come to the mill, and they accordingly went. He said that he desired either to take back the half interest in the mill or to lease it—he must have sole control of it. After some conversation, defendant and Collier agreed to let him have said interest back. But they had furnished hogs and a cow to the mill of the value of $100 00 or $150 00, and the mill had cleared, during the time they owned an interest in it, over $2,000 00. The agreement was accordingly made that plaintiff should pay to them $1,000 00, settle the debts of the firm, give up their notes, and they would reconvey to him the same interest they had purchased, and he should have all they had put in and all the mill had made. This $1,000 00 was all that defendant and Collier ever received on account of said mill, etc., and though embraced in the expressed consideration in the deed from them to plaintiff, yet, in fact, it was paid as above stated. Plaintiff has never settled the debts of the firm; about $800 00, principal, remains unpaid; he is insolvent.

The plaintiff testified that the $1,000 00 paid by him was a part of the consideration of the deed made by Collier and Willingham to him; that the profits of the mill had been divi-

ded before that time; that he threatened to withdraw from the trade unless the warranty was embraced therein.

The only connection that Samuel Pulliam seems to have had with the property is derived from the fact that after the mill house was burned, Tumlin, Fields and he, the usees set forth in the declaration, built another.

Much other testimony was introduced, but being considered immaterial, is omitted.

The Court charged the jury, "that if the plaintiff first sold to the defendants the same property and the same water privileges, with warranty of title, this would not necessarily bar or defeat the plaintiff's action, unless he had thrown defendants off their guard by misrepresentations as to the extent of the water privileges; but that if the plaintiff paid more in repurchasing the property than the amount of his warranty to them, the surplus over the amount for which he was liable to them on his warranty, might be recovered, provided there had been a breach of the water privileges proven in this case, and the damage sustained you find to be more than Fields' warranty to them—that is to say, if the warranties each way were for a half interest in the property, plaintiff cannot recover unless half the damage to the whole property exceeds the amount of consideration and interest expressed in plaintiff's warranty to the defendants, and then only for the difference."

The jury returned a verdict for the plaintiff for $1,390 00 and costs.

The defendants moved for a new trial upon several grounds, and amongst them, because the verdict was contrary to the law and the evidence, and because of error in the aforesaid charge. The motion was allowed and a new trial ordered. Whereupon plaintiff excepted.

W. H. DABNEY; J. A. W. JOHNSON; D. A. WALKER, for plaintiff in error.

WARREN AKIN; W. K. MOORE, for defendants.

Fields *vs.* Willingham *et al.*

TRIPPE, Judge.

1. The respective deeds from Fields to Willingham and Collier, and from the latter back to the former, were, so far as they affect the rights growing out of this action, substantially the same, both as to what was conveyed by the deeds, and the warranties contained in them. It may be true, that by the deed of Willingham and Collier, Fields obtained the right to the overflow of their land as the water stood when each of the conveyances was executed. It does not appear that he had that privilege before these sales were effected. No claim is asserted by the plaintiffs founded on any breach of the warranty to Fields, so far as that right is concerned. The fact that this easement was thus secured, in addition to what he formerly owned, cannot strengthen his claim, or those claiming under him, to damages for the loss of the right to overflow the lands of the Nesbits. It may have been one inducement to have caused the increase in the consideration expressed in the deed of Willingham and Collier over that in the deed of Fields. It cannot be doubted that if the consideration of the two deeds were the same, that Fields could not recover of Willingham and Collier for a breach of the warranty, from a cause existing at the time he made his deed to them. For his recovery would be the ground and measure of a recovery by them back from him, and the law will not permit such a circuity of action. This was not denied in the argument, nor did we understand it to be denied that Fields' privies, or the successors in the title under him, the plaintiffs in this action, would labor under the same disability.

But the position assumed by plaintiff in error is, that the sole ground of this rule is, that the two recoveries must be for precisely the same sum; that if the rights of the respective parties were not governed by the same measure of damages, and the recoveries would not be equal in both actions, then the right of action exists in the first warrantor, although he has warranted the same property to the defendant.

It is true, this doctrine of rebutter, as thus applied, is often

put upon the ground, that where the plaintiff's judgment or recovery would be the foundation of another suit by the defendant against the plaintiff, such recovery will not be allowed, because the very amount of plaintiff's judgment will be the amount of a second one against him in favor of the defendant. But it is not always stated with the qualification that the recoveries must be identical in cases of mutual warrantees. In *Sibley vs. Beard*, 5 *Georgia*, 552, the rule is stated to be: "If A sells property to B, with warranty of title, and B sells the same to A, with warranty, and A is deprived of it by legal process upon a title in a third person, he cannot maintain an action against B for the breach of his warranty, because if he recovers of B he would be entitled to turn round and sue A for a breach of his prior warranty. The Courts will avoid circuity of action." And again, in the same case, if A sells to B and B to C, and C back to A, all with warranty, and A be dispossessed upon a title paramount in D, he cannot maintain an action against C, for the parties being all in privity, the liability would come round on A. No reference is made in the decision to the fact, whether, in the case before the Court, the respective recoveries, if allowed, would be identical, and nothing as to what was the consideration of the respective sales. It was held that there was no privity between Beard and Sibley, and hence, that the doctrine as to circuity of action did not apply between them. Beard had sold the property to the Eagle and Phœnix Hotel. Sibley sold to Beard. It did not appear how Sibley got his title. The decision further says: "If the Eagle and Phœnix Hotel had sold the property to Sibley with warranty, and he back to again to Beard, the principle would be applicable." The facts of the case were, as will be seen by the original record, that the respective considerations of the two contracts were not the same. One was for $300 00 and the other for $250 00. No importance was given to that, nor does it seem that it would have affected the judgment.

The same principle is frequently stated without its being put on the ground of the recoveries being for the same amount.

Fields *vs.* Willingham *et al.*

Take the case of a deed made by A to B, with warranty, the consideration of which is love and affection, commonly called a deed of gift. If B were to re-convey to A, with warranty, and A were evicted by C upon a paramount title, could A recover of B upon a breach of his warranty? By our law the measure of recovery is the purchase money and interest. B paid nothing. Could he recover of A if he were evicted? The measure of A's claim would be what he paid B, if he could recover at all. It would not be the principle of circuity of action founded on the several recoveries being equal, that would prevent an action by A. Another element enters into such questions when they arise on reciprocal warranties. The first warrantor, who is the plaintiff in the cases supposed, has solemnly assured his vendee, by deed, that he has the title, and gives his covenant of warranty to maintain the truth thereof.' His covenantee accepts it, acts upon it, and may improve the property purchased. He re-conveys to his vendor, it may be, for a greater price than he gave. The title fails, because it never was in the original vendor. Can he be allowed an action, resting it upon the falsity of his solemn assurance? Can he deny the title which he affirmed by seal and warranty was in him, by showing it in somebody else, and thereby make what is the breach of his own covenant the foundation of another right in him against his own vendee?

Lord Mansfield, in Goodtitle *vs.* Bailey, 2 Cowper, 597, defines an estoppel by matter of deed, thus: "No man shall be allowed to dispute his own solemn deed." Bigelow, in his work on Estoppel, 267, says: "An estoppel, by matter of deed, may be defined to be a preclusion against the competent parties to a valid sealed instrument and their privies, to deny its force and effect by any evidence of inferior solemnity." Our own Code, under this head, when speaking of presumptions of law, which will not allow an averment to the contrary, specifies: "Recitals in deeds, except payment of purchase money, as against the grantor acting in his own right and *sui juris*, and his privies in estate, blood and in law." New Code, section 3753.

To permit a recovery by A against B, on the warranty of the latter to the former, when A had made a prior warranty to B, on the ground of a difference between the considerations of the two deeds, would be in conflict with the above wholesome principle, unless A could recover the whole purchase money he paid, which would be odious, and if he were limited to the *difference between the two prices*, it would be in conflict with the statutory measure of damages, which is the purchase money with interest.

2. We do not understand that it is denied that the subsequent vendees holding under Fields, whether purchasing at a judicial or private sale, are affected by the equities existing between Fields, on the one part, and Willingham and Collier, on the other part; and further, that they had notice of the fact on which these equities are founded, to-wit: Fields' deed to Willingham and Collier. In *Martin vs. Gordon*, 24 *Georgia*, 533, the facts were, that Gordon sold to Fife, with warranty, the consideration, as recited in the deed, being $500 00. Fife sold to plaintiff for $1,000 00. The plaintiff being evicted, brought suit against Gordon on a breach of his warranty. Gordon pleaded that the real consideration of his deed was only $100 00. It was held that "neither Gordon's grantee nor any subsequent conveyancee, in the absence of fraud, is entitled to recover more than the price actually paid for the land, with the interest thereon." Judge LUMPKIN said, "the result of a careful examination of the authorities establishes that subsequent purchasers are affected by the equities between previous parties. If A sell land to B, with covenant of warranty, and B releases A and sells to C, who is evicted by paramount title, A is nevertheless discharged, and damages cannot be recovered against A by C, upon A's warranty to B." BENNING, Judge, went still further. He said, "Gordon having no title when he made the warranty to Fife, the warranty did not pass from Fife to his assignee, and consequently a right of action on it never vested in her." Many authorities were cited on this point, but it is not necessary to consider that question now. The evidence showed that Fife had given Gordon a

bond of indemnity before he sold. Judge BENNING expressed a strong intimation that the bond was a release of Gordon, and extinguished the covenant, thereby preventing it from passing to Fife's assignee, whether she purchased with or without notice of such release. Both Judges concurred in the decision that the consideration of Gordon's deed to Fife being, in fact, but $100 00, though expressed to be $500 00, Fife's assignee could not recover but the $100 00. And this was not put upon the ground that Fife's vendee had notice of such fact. It was so held, independent of the question of notice to her. Judge McDONALD dissented from the judgment of the Court, and put his dissent on the ground that Fife's vendee purchased without notice. He admitted that Gordon could show the consideration was only $100 00, for the purpose of limiting Fife's recovery, but not to affect a *bona fide* purchaser without notice. He did not deny that she would be affected by it if she had notice.

In the case under consideration, the subsequent vendees were, by law, charged with notice. The section of the Code which has been quoted includes the grantor and his privies in estate. Fields' deed to Willingham and Collier was part of the chain of title held by these purchasers, and the fact of his warranty was apparent on its face. On that fact was based Willingham and Collier's equity, and of it they had knowledge. Moreover, the deed was of record.

We do not think that what Willingham and Collier did towards aiding the Nesbits in their suit can affect their liability. That was a matter touching the rights of the Nesbits. Fields had warranted, in substance, that they had none. He cannot complain at their assertion to the contrary. It was a right adjudicated by law, and by presumption of law—not only rightly adjudicated, but so done on a state of facts in conflict with Field's warranty. Willingham and Collier were not responsible because those facts existed. Nor did they have any power in controlling the judgment founded on them.

The judgment of the Court granting the new trial is affirmed.