## McADAMS v. BAILEY ET AL.

[No. 21,166. Filed December 18, 1907.]

1. DEEDS.—*Quitclaim.*—*Effect as to Future Interests.*—An ordinary quitclaim deed conveys no title to future interests in property. p. 521.

2. SAME.—*Assignments of Possible Interests.*—*Common Law.*— *Equity.*—At the common law deeds to strangers of possible future interests in land were void; but in equity they were sustained as executory contracts, where based upon valuable considerations, not contrary to equitable rules of public policy, and there existed a duty to convey. p. 521.

3. SAME.—*Subsequently Acquired Interests.*—*Estoppel.*—Regardless of equity, conveyances of subsequently acquired interests in land can be effected by the principles of estoppel. p. 522.

4. SAME.—*Warranty.*—*Effect.*—A warranty in a deed concludes the grantor from asserting after-acquired title to the land conveyed. p. 523.

5. SAME. — *Quitclaim.* — *Estoppel.* — *Recital of Specific Interest Conveyed.*—Where a quitclaim deed recites the specific interest conveyed thereby, it will operate as an estoppel against the grantor from asserting an after-acquired title to such interest. p. 523.

6. SAME.—*Warranty.*—*Estoppel.*—The doctrine of warranty, as applied to deeds, is regarded with favor, and that of estoppel, with disfavor. p. 523.

7. SAME.—*Warranty.*—*Extent of Estoppel Created.*—The extent of the estoppel created by the warranty in a deed is measured by the language of the warranty, and not by the description or recitals in the deed, and whether such description or recitals are true, or known to be untrue, is not material. p. 524.

8. SAME.—*Of Interest to be Acquired.*—*Estoppel.*—A quitclaim deed specifically conveying an interest to be acquired upon the death of the grantor's mother estops such grantor and his grantees from asserting title to such interest upon the death of the mother. p. 525.

9. APPEAL.—*Decisions.*—*How Considered.*—Decisions on appeal must be restricted to the facts before the court. p. 527.

10. DEEDS.—*Vested Interests.*—*Expectancies.*—*Fraud.*—A deed of an interest fixed by law cannot be impeached for fraud in the same manner as the conveyance of a mere expectancy depending upon the bounty of the ancestor. p. 527.

11. DESCENT AND DISTRIBUTION.—*After-Acquired Interest.*—*Widows.*—*Second Marriage.*—Under the act of 1852 (1 R. S. 1852, p. 250, §18) a widow remarrying held what was in the nature of a

base or determinable fee in lands received by descent from the former husband; and in the event of her death during such second marriage such lands descended to the children by such former husband. p. 527.

12. DEEDS.—*Public Policy.*—*After-Acquired Interest.*—*Children of Former Marriage.*—While the children of a former marriage had no legal interest, under the act of 1852 (1 R. S. 1852, p. 250, §18), in lands descending from their father and held by the mother during her second marriage, public policy did not forbid the alienation by the children of their prospective interests therein. p. 527.

13. SAME.—*Reversions.*—*Remainders.*—The conveyance of reversions and remainders may be impeached for fraud. p. 529.

14. SAME.—*Contingent Remainders.*—In the absence of fraud a sale of a contingent remainder in lands is valid and enforceable. p. 532.

15. SAME.—*Consideration.*—*Remainders.*—*Expectancies.*—Mere inadequacy of price is not sufficient evidence to set aside, as fraudulent, a sale of a contingent interest in lands, though such evidence may be sufficient to set aside the sale of an expectancy. *Chambers* v. *Chambers*, 139 Ind. 111, overruled. p. 533.

16. TRIAL.—*Special Findings.*—*Omissions.*—Facts omitted from a special finding are presumed to have been found against the party having the burden of proof thereon. p. 534.

17. SAME.—*Burden of Proof.*—*Evidence.*—The burden of proof never shifts; though the duty to go forward with evidence does. p. 534.

18. SAME.—*Special Findings.*—*Sales.*—*Reversions.*—Special findings showing that a son sold his expectancy in his mother's one-third interest in her deceased husband's lands, the mother receiving the full and fair consideration therefor; that the purchasers acted in good faith, and that the son was not overreached in any manner, sustain a decree in favor of the purchaser. p. 534.

19. SALES.—*Expectant Interests in Lands.*—*Family Settlements.*—Family settlements are favorably regarded by courts of equity, and will be upheld where no fraud is shown. p. 535.

From Benton Circuit Court; *Joseph M. Rabb,* Judge.

Suit by Charles V. McAdams against Elizabeth I. Bailey and others. From a decree for defendants, plaintiff appeals. Transferred from Appellate Court under §1394 Burns 1908, subd. 2, Acts 1901, p. 565, §10. *Affirmed.*

*Charles V. McAdams, pro se.*

*Fraser & Isham,* for appellees.

GILLETT, J.—Appellant was plaintiff below. His suit was to quiet title. The questions in the case arise upon a special finding, and, so far as now material, they relate to the ownership of a one-third interest in a tract of real estate owned by Elizabeth Weidenhammer in her lifetime. According to the findings, she inherited said share from her first husband, James H. Lincoln. Zachariah T. Lincoln was a son by said marriage, and is still in life. Said Elizabeth, while so holding said interest, married Simon Weidenhammer, and died during the continuance of the latter coverture. Said Zachariah inherited, upon the death of his father, a two-ninths interest in said tract of land, and afterwards contracted to sell his two-ninths interest to his stepfather, said Simon. Subsequently, in the year 1871, the latter and his wife, together with said Zachariah and his wife, executed a warranty deed to Moses Fowler and Samuel Alexander, through whom appellees claim. The granting clause of the deed was of "all the interest by right of inheritance which said grantors acquired from said James H. Lincoln, deceased, in and to" a certain tract of land, which was particularly described, the description being of the tract in which said Elizabeth and said Zachariah had their respective interests as before stated. Following the granting clause, it was recited in said deed that "the interest hereby conveyed by said Zachariah T. Lincoln is the equal, undivided one-third part of two-thirds of the same, and any other interest which might accrue to said Zachariah T. Lincoln, after the death of said Elizabeth, his mother, in consequence of her second marriage with said Weidenhammer, and the interest of said Elizabeth hereby conveyed is the equal undivided one-third part of said land, and is the entire estate except two-thirds of two-thirds due the remaining heirs, being two, of said James H. Lincoln, deceased." Said Simon negotiated the sale evidenced by said deed. He had not purchased said Zachariah's expectancy in the one-third of his father's lands which came to his mother. Said

Zachariah had nothing to do with the negotiation of the subsequent sale, except to execute the deed. He executed the same to carry out his contract of sale with said Weidenhammer, and for no other purpose. The grantees paid the reasonable value of the interests which the deed purported to convey. The purchase money was paid to said Simon, and no part of it was paid to said Zachariah. Said Simon retained of the purchase money the portion representing the two-ninths interest of said Zachariah, and gave to said Elizabeth the balance thereof. The suit was originally commenced by said Zachariah, but during its pendency he made a conveyance to appellant, who was thereupon substituted as plaintiff.

As the fee was in said Elizabeth to the one-third of the real estate which she inherited from her first husband, it does not admit of question that a mere quitclaim

1. deed by her son, not purporting to convey any particular interest, would have been ineffectual to convey his possible future interest therein. A deed of such an interest to a stranger would have been invalid at the

2. common law, as calculated to provoke maintenance and other contentions. *Lampet's Case* (1613), 10 Coke 46-48. Courts of equity, however, have from a very early period upheld specific assignments of mere possibilities, based on a valuable consideration, where the enforcement of the agreement would not contravene their own rules or public policy, the underlying theory being that where there is a duty to convey the agreement will be given force as an executory contract. 3 Leading Cas. in Eq. (3d Am. ed.), 307, 308, 343, 362; *Smithurst* v. *Edmunds* (1862), 14 N. J. Eq. 408, 416; *Barick* v. *Edwards* (1840), Hoffman's Ch. *382; *Emerson* v. *European, etc., R. Co.* (1877), 67 Me. 387, 24 Am. Rep. 39; *In re Wilson's Estate* (1845), 2 Pa. St. 325; *East Lewisburg Lumber, etc., Co.* v. *Marsh* (1879), 91 Pa. St. 96; *Ruple* v. *Bindley* (1879), 91 Pa. St. 296; *Rodijkeit* v. *Andrews* (1906), 74 Ohio St. 104, 77 N. E. 747,

5 L. R. A. (N. S.) 564; note to *McCall* v. *Hampton* (1895), 56 Am. St. 335, 354. In *Mitchell* v. *Winslow* (1843), 2 Story 630, Fed. Cas. No. 9,673, which involved the validity of a mortgage upon machinery, tools and stock in trade, to be thereafter acquired in connection with a going business, Story, J., said: ''Upon the best consideration which I am able to give to the subject, I think it [the mortgage] is good and valid. Courts of equity do not, like courts of law, confine themselves to the giving of effect to assignments of rights and interests, which are absolutely fixed and *in esse*. On the contrary, they support assignments, not only of choses in action, but of contingent interests and expectancies, and also of things which have no present actual or potential existence, but rest in mere possibility only. In respect to the latter, it is true, that the assignment can have no positive operation to transfer, *in praesenti*, property in things not *in esse;* but it operates by way of present contract, to take effect and attach to the things assigned, when and as soon as they come *in esse;* and it may be enforced as such a contract *in rem,* in equity.'' Irrespective, however, of

3. the jurisdiction of courts of equity, it has always been possible to convey subsequently-acquired interests by the operation of the principle of estoppel. 3 Washburn, Real Prop. (6th ed), §1916; Rawle, Covenants for Title (4th ed.), 393; 18 Viner's Abridgment, title, Release, G 299; *M'Crackin* v. *Wright* (1817), 14 Johns. *193; *Stover* v. *Eycleshimer* (1865), 46 Barb. 84; *Bank of Utica* v. *Mersereau* (1848), 3 Barb. Ch. 528, 49 Am. Dec. 189; *Pelletreau* v. *Jackson* (1833), 11 Wend. *110; *Trull* v. *Eastman* (1841), 3 Met. (Mass.) 121, 37 Am. Dec. 126; *Habig* v. *Dodge* (1891), 127 Ind. 31; *Griffis* v. *First Nat. Bank* (1907), 168 Ind. 546; *Smith* v. *Pendell* (1848), 19 Conn. *107, 48 Am. Dec. 146. In the leading case of *Doe* v. *Oliver* (1829), 5 M. & R. 202, reported in 2 Smith's Leading Cas. (11th ed. by Chitty), 724, it is declared that the interest,

when it accrues, feeds the estoppel.    The fruit and
4.   effect of a warranty in a deed is that it concludes
     the warrantor, so that all present and future rights
that he has or may have in the land, are thereby extinct.   1
Sheppard's Touchstone (1st Am. ed.), *182.

Although, as before indicated, an ordinary quitclaim deed
will not estop the grantor from asserting an after-acquired
                    interest, yet a distinct recital in a deed without cove-
5.   nants, showing that the parties proceeded on the
     theory that a particular interest was thereby con-
veyed, may be as effectual to create an estoppel as a war-
ranty. *Van Rensselaer* v. *Kearney* (1850), 11 How. 297, 13
L. Ed. 703; 1 Jones, Real Prop., §991. Appellant,
however, insists that there can be no estoppel where the
truth appears in the instrument. This is, no doubt, a gen-
eral principle as applied to ordinary recitals. We question
the application of this doctrine to distinct undertakings
for the transfer of after-acquired property. We place our
ruling, however, not on the effect of the recitals, as such,
but on the ground that an estoppel exists because of the
covenant of warranty. Lord Coke observes that although
               estoppels are odious, yet warranties are favored in
6.   law, being part of a man's assurance. 2 Coke's In-
     stitutes (by Thomas), *272. It is a mistake to liken
an estoppel by deed to an estoppel *in pais.* It is stated in a
note to 4 Kent's Comm. (14th ed. by Gould), *261, that
"technical estoppels by deed or matter of record sometimes
conclude the party without any reference to the moral qual-
ities of his conduct," citing *Welland Canal Co.* v. *Hath-
away* (1832), 8 Wend. *480, 24 Am. Dec. 51; *Dezell* v.
*Odell* (1842), 3 Hill 215, 38 Am. Dec. 628. In *Trull* v.
*Eastman, supra,* it was held that a deed between brothers,
made with the consent of their father, purporting to con-
vey all of the interest of the grantor in and to the estate
of the father, whether the same should fall to the grantor
by will or descent, accompanied by a special covenant of

nonclaim, operated to rebut or bar the grantor when he afterwards sought to recover his share of the real estate. In *Habig* v. *Dodge, supra,* the facts were that by warranty deed a man attempted to convey to his brother the former's contingent interest in lands which were held by his step-mother by virtue of her marital right in the lands of the grantor's deceased father, she being a childless second wife. Mitchell, J., speaking for the court, said: "It appears upon the face of the instrument that the grantor assumed to convey and warrant title to a reversionary interest equal to the undivided one-third of the real estate previously set off to the widow. It is evident that the parties dealt upon the footing that the grantor bargained and sold, and that the grantee acquired by the deed, a one-third interest in the land in dispute, subject to the estate, or supposed estate, of the widow. In equity and good conscience the grantor, and all those claiming through him, should now be estopped to assert the contrary." See, also, *Clendening* v. *Wyatt* (1895), 54 Kan. 523, 38 Pac. 792, 33 L. R. A. 278.

The question under consideration is discussed in *Ayer* v. *Philadelphia, etc., Brick Co.* (1893), 159 Mass. 84, 34 N. E. 177, where Holmes, J., speaking for the court, said:

7. "The estoppel is determined by the scope of the conventional assertion, not by any question of fraud or of actual belief. But the scope of the conventional assertion is determined by the scope of the warranty which contains it. Usually the warranty is of what is granted, and therefore the scope of it is determined by the scope of the description. But this is not necessarily so; and when the warranty says that the grantor is to be taken as assuring you that he owns and will defend you in the unencumbered fee, it does not matter that by the same deed he avows the assertion not to be the fact. The warranty is intended to fix the extent of responsibility assumed, and by that the grantor makes himself answerable for the fact being true. In short,

if a man by a deed says, I hereby estop myself' to deny a fact, it does not matter that he recites as a preliminary that the fact is not true. The difference between a warranty and an ordinary statement in a deed is, that the operation and effect of the latter depend on the whole context of the deed, whereas the warranty is put in for the express purpose of estopping the grantor to the extent of its words. The reason 'why the estoppel should operate, is, that such was the obvious intention of the parties.' *Blake & Goodhue* v. *Tucker* [1840], 12 Vt. 39, 45.'' In *Burk* v. *Hill* (1874), 48 Ind. 52, 17 Am. Rep. 731, this court quoted with approval the following language of the supreme court of Illinois in *Beach* v. *Miller* (1869), 51 Ill. 206: ''When a purchaser obtains title by deed without covenants, he of course takes it' subject to all defects and encumbrances it may be under at the time of the conveyance. But where a person insists upon and obtains covenants for title, he has the right, when obtained, to rely upon them and enforce their performance or recover damages for their breach. The vendor is under no compulsion to make covenants when he sells land, but having done so he must keep them or respond in damages for injury sustained by their breach. Nor is it a release or discharge of the covenant to say that both parties knew it was not true or that it would not be performed when it was made.'' See, also, *Watts* v. *Fletcher* (1886), 107 Ind. 391.

It is true that the warranty is usually construed as coextensive with the granting clause, and therefore a conveyance of all the grantor's interest, while capable of 8. carrying the fee, is ordinarily satisfied by the passing of a present interest, since it would not necessarily be assumed that the grantor was warranting the conveyance of that to which a title could not be made *in praesenti*. So to hold would cast on the grantor an unjust obligation. Here, however, the deed goes further, and it purports to convey, not alone all of the interest by right of inheritance,

which the grantors acquired from James H. Lincoln, deceased, but it specifically states that the interest conveyed by the grantor, under whom appellant claims, is, in addition to his two-ninths interest, the particular interest which might accrue to him, after the death of his mother, in consequence of her second marriage. There can be no doubt, in these circumstances, that said grantor, as well as appellant, who claims under him, are under the operation of an estoppel. They cannot be heard to say that the title to said contingent interest did not pass, because the former warranted the title to that which was granted, and the deed states that such contingent interest is ''hereby conveyed.'' As was said by the New York court of appeals in *Thompson* v. *Simpson* (1891), 128 N. Y. 270, 28 N. E. 627: ''The rule found stated in some of the books that there is no estoppel where an interest passes, according to the modern cases, has no application to conveyances intended to pass the whole title, although the grantor had a limited interest which was carried by the conveyance.''

It is, however, contended by appellant that the deed is void as against public policy, citing *McClure* v. *Raben* (1890), 125 Ind. 139, 9 L. R. A. 477; *McClure* v. *Raben* (1893), 133 Ind. 507, 36 Am. St. 558. Appellant also relies upon *Chambers* v. *Chambers* (1894), 139 Ind. 111, in which it was held that a reversionary interest could only be sold upon a full consideration, and that the adequacy of the consideration must be determined without reference to the value of the particular estate. As to *McClure* v. *Raben, supra,* it is to be observed that that case had to do with an attempted conveyance of the bare expectancy of a son in the real estate of his mother, the absolute fee being in her. The composite of the decisions in said case is that such conveyances are regarded with disfavor, and that the burden is on the grantee to repel an inference of fraud by showing a fair transaction in which a full consideration was paid, and that the consent of the ancestor was obtained.

It is scarcely necessary to state that the observations of the court in the decisions last referred to are to be limited to the facts before it, and that in such a case as this, in which the interest or right of the son was fixed by the law, the theory that conveyances of bare expectancies are in fraud of the bounty of the ancestor can have no application. It is doubtless true that attempted conveyances of bare expectancies by presumptive heirs are narrowly watched by courts of equity, at least when it is necessary to invoke their jurisdiction, and that in such cases the burden is on the assignee to repel the inference of constructive fraud, yet it cannot be affirmed that such courts look with disfavor upon what are construed as executory contracts for the transfer of future interests, where common honesty requires that they should be carried out, for there is a multitude of cases in which courts of chancery, whose affirmative action can only be invoked by considerations of conscience, have ordered the specific performance of such contracts. See White & Tudor's and Hare & Wallace's notes to 3 Leading Cas. in Eq. (3d Am. ed.), 306, 332; note to *McCall* v. *Hampton* (1895), 56 Am. St. 335, 339. In this case the fee was in the mother, but it was in the nature of a base or determinable fee. In strictness, said Zachariah, as a child by the first marriage, had no interest, since the statute (1 R. S. 1852, p. 250, §18) was but a canon of descent. But it is to be observed that in the accomplishment of the general purpose of the law, to transmit the estate to the child or children of the former marriage, the only prohibition therein found is that the widow shall not alienate. No such limitation is found as to the children, and, if of full age, there would be no more reason in public policy for prohibiting their conveyance, by any form of deed which would be effectual in law or equity, than there would be for prohibiting the conveyance of any reversion or remainder of a contingent character. Indeed, the statutory rights of the chil-

dren under our statute are analogous to the contingent interest of one whose title must take effect as an executory devise, whereunder an interest having a resemblance to a contingent remainder may be supported, although it cannot take effect as such, on the theory that although the freehold may not in the meantime be disposed of, until the happening of the event the title remains in the heir at law. Such an interest is regarded as a possibility coupled with an interest, and alienable as such. 2 Washburn, Real Prop. (4th ed.), *367. Where, however, the contingency lies in the survivorship of the devisee until the happening of the event, it is obvious that he can only alien the contingency which he himself possesses.

Bearing in mind the words and purpose of the statute, it is evident that the attempted conveyance of appellant's grantor which is here in question should not be put on the plane of a conveyance by a child who has a mere expectancy that he may receive property by devise or descent from his parent. The difference between the two situations is indicated in *Jackson* v. *Waldron* (1834), 13 Wend. 178, 214, wherein Senator Tracy said: ''The right or interest which one may have as heir apparent or heir presumptive, is very distinguishable from that one has under a devise, which gives him an estate in fee simple on the contingency that the first devisee dies without issue; for the heir, during the life of the ancestor, not only has no estate, but even if he survive him, he will not necessarily get any—for the entire and unlimited estate being in another, it is in his mere volition to sell it or devise it to another; in short, the interest of the heir does not differ in its nature from that of an expectant devisee, which is an interest which everyone may claim to have in every other's estate. But in the other case, the contingent devisee has a defined right of expectation, which is independent of the volition or caprice of any other; and on the happening of a contingency which Providence alone controls, he must come to the enjoyment of the full estate. In

two such cases, I say, one can easily recognize the distinction between a mere naked possibility and a possibility coupled with an interest.'' Our concern, however, need not be to show that the particular assignment was of a possibility coupled with an interest, but it is enough to show that the transaction is without the category of an attempted sale by a mere expectant heir, as to whom there are peculiar rules of proof. The grantor not being in that category, it would seem that the grantees ought not to be put in a worse position, because there was a possibility, than they would have been in were the grantor destitute of interest. 3 Leading Cas. in Eq. (Hare & Wallace's notes), 343.

It is true that as respects assignments by mere expectant heirs, courts of equity have been disposed to hedge them about by rigid rules designed to repel the inference of fraud, and it must be admitted that a disposition has been manifested by the English courts to treat the sale of reversionary interests as falling within the same class. Some of the English judges have taken the broad ground that the consummation of such transactions ought to be made difficult, but the doctrine has met with remonstrance (*Shelly* v. *Nash* [1818], 3 Madd. 125; *Hincksman* v. *Smith* [1827], 3 Russell Ch. 433), and the right to make such sales by auction has been recognized. *Shelly* v. *Nash, supra.* The English rule was changed, as to the requirement of a full consideration, by 31 Vict., chap. 4, the act providing that ''no purchase made *bona fide* and without fraud or unfair dealing, of any reversionary interest in real or personal estate shall hereafter be opened or set aside merely on the ground of under value.'' Jeremy observes that sales of reversionary interests are not necessarily of a character calculated to excite suspicion (Jeremy, Eq. Jurisdiction, *399), while Judge Story, referring to such sales, states that ''the principle and the policy of the rule may both be equally questionable. Sellers of reversions are not necessarily in

the power of those with whom they contract, and are not necessarily exposed to imposition and hard terms." 1 Story, Eq. Jurisp. (13th ed. by Bigelow), §338. The question received full consideration upon the authorities in *Cribbins* v. *Markwood* (1856), 13 Gratt. 495, 67 Am. Dec. 775, and the doctrine of the English courts was there repudiated, the case being one of a conveyance of a vested remainder. It is shown in that case that in some of the English cases the courts have been disposed to place reversioners and remaindermen in the category of expectant heirs as a matter of public policy, in order to keep them dependent upon the ancestor, to the end that the power of the head of the house may be preserved, and that wealth and titular rank may be transmitted together. No such public policy exists in this country, the court declares, our policy being against the locking up of wealth in families from generation to generation, and therefore it is not necessary for the purchaser to take the burden of making good the transaction. Allen, J., speaking for the court, on page 508, said: "The inquiry in reference to sales by reversioners or remaindermen, should be whether in the particular case actual fraud existed. Inadequacy of price, youth, inexperience, indebtedness, distress, are circumstances to be looked to and weighed in determining whether the bargain in the particular instance is not so unconscionable as to demonstrate some gross imposition, circumvention, or undue influence; and to justify relief on the ground of fraud. In the absence of such proof of actual fraud, I do not think that it is incumbent on the purchaser of such an expectant interest to make good the bargain, by showing that a full and adequate consideration was paid." And again, it was said on page 507: "Whatever principle may be adopted in reference to contracts with expectant heirs, secretly selling the chance of a parent's or some relation's bounty, it seems to me that the actual owner of a vested interest in property, whether in reversion or remainder, should not be reduced to the condition of pupilage

from regard to any supposed rule of public policy, or for the purpose of extending to him any particular protection.''

*Davidson* v. *Little* (1853), 22 Pa. St. 245, 60 Am. Dec. 81, was a case where a remainderman sold his interest for a disproportionate consideration. Black, C. J., after pointing out the fact that the contract was executed, and that there was a difference between such a case and one where the grantee had to apply for specific performance, said: ''But inadequacy alone must be rejected as insufficient to justify the cancelation of a conveyance, except in the case of an heir expectant, who anticipates his inheritance by selling it before he gets it. * * * Inadequacy of price is not fraud. A man may be as honest in making a profitable bargain as a bad one; and the law does not require him to pay a full price, if the person he deals with is willing to take less. The owner of property may sell it for very little, or give it away for nothing, if he thinks fit; and however unreasonable his conduct may seem, his will alone is sufficient to avouch the act—'*stat pro ratione voluntas.*' * * * The court should have charged the jury that, if there was no actual fraud committed by the vendee, the conveyance could not be disturbed; that the inadequacy of the price, gross as it was, could be regarded only as evidence of fraud; that this being the case of an executed contract, the inadequacy is not sufficient to prove the fraud without some additional evidence; that all the facts connected with the transaction must be considered together; and if by this means it should appear to be honest, the verdict ought to be for the vendee.''    *Whelen* v. *Phillips* (1892), 151 Pa. St. 312, 25 Atl. 44, involved the validity of the sale of a legacy which had been bequeathed to a person on the contingency that he outlived his mother, and the court there said: ''In England, the words 'expectant heir' originally meant just what the expression naturally signifies,—an heir expecting an inheritance through intestacy or devise. The doctrine of 'expectant heir' amounted to nothing more than this, that a person should not, at

common law, sell that which did not belong to him, either in possession or by vested right, but which he hoped might be acquired either certainly or contingently in the future. As thus understood, the doctrine was similar to that recognized in this state, viz.: that, at common law, a man may not sell or assign that in which he has no interest, and which therefore does not and may not exist; but, in England, as here, in equity a person may be compelled to make good or to treat as valid an assignment of a mere expectancy, of a mere possibility, of something which does not actually exist. As the result of judicial sympathy with the nobility in England the doctrine from time to time expanded until it became so inconsistent with justice as to call for the interposition of parliament. Pollock, Prin. of Contract (Am. ed. by Wald), *549, *556; 2 Leading Cas. in Eq. (4th Am. ed., Hare & Wallace's notes), 1607 et seq. But, without inquiring as to the present status of the law elsewhere, it may be confidently asserted that in this State a person, sui juris, owning a contingent remainder in land, or in personal property, may sell the same for such sum as may be agreed upon between himself and the purchaser, provided the former does not stand towards him in a trust relation, and, in making the purchase, acts in good faith.'' See, also, Jackson's Estate (1902), 203 Pa. St. 33, 52 Atl. 125; Phillip's Estate (1903), 205 Pa. St. 511, 55 Atl. 212; Jaeschke v. Reinders (1876), 2 Mo. App. 212; Bispham, Prin. of Eq. (7th ed.), p. 333; note to McCall v. Hampton (1895), 56 Am. St. 335, 354; 5 Am. and Eng. Ency. Law (2d ed.), 765. Chancellor Kent declares the general rule respecting ordinary sales that inadequacy of price is not a sufficient ground for setting them aside, unless the inadequacy is so gross and palpable as, of itself, to afford evidence of. actual fraud. Osgood v. Franklin (1816), 2 Johns. Ch. 1, 7 Am. Dec. 513.

There can be no doubt, under the authorities in this country, that mere inadequacy of consideration does not afford a

sufficient reason for setting aside the conveyance of a contingent interest in property, or what approximates thereto, although the doctrine is doubtless otherwise as respects sales by expectant heirs of their supposed interest in the lands of living ancestors. It must be admitted that our holding cannot be in all respects reconciled with *Chambers* v. *Chambers* (1894), 139 Ind. 111. In that case the court was influenced to lay down an iron rule as to consideration by reason, as it appears, of some general observations by text-writers, which had for their basis the English rule. Future interests in property, based on contract, devise or statute, are valuable interests, and it is a mistake to place them in the category of wagering contracts. Imposition may often be practiced on reversioners, and contracts with them are doubtless subject to the scrutiny of courts of equity, but there being no policy in this country to maintain family wealth, and such interests being often the only possession of reversioners, we refuse to hold that a rule as to consideration which would place an embargo upon all such sales should be adopted, or that, there being no fraud in fact, and no undue influence, the court should go to any quixotic length to protect such persons. We have considered whether the case referred to should be distinguished, as might possibly be done, or whether it should be overruled so far as it places reversioners and persons having an expectancy from a living ancestor in all cases in the same class. Having considered that the case is a solitary one in this State, that more good is likely to come from modifying it than from maintaining a wrong rule, and that no extensive property rights based on said case can be affected by its overthrow, since subsequent deeds of reversions, in the nature of things, cannot often have been taken while the lands were in the adverse possession of others under a prior deed, our conclusion is that said case should be overruled to the extent indicated. *Paul* v. *Davis* (1885), 100 Ind. 422.

The question remains whether the findings are sufficient to

justify a setting aside of the conveyance. It may be admitted that an inference of fraud may in some circumstances grow out of the fact that the grantor parted with his expectancy without directly receiving any consideration. It does not admit of doubt that the fact that a parent was the beneficiary of the transaction might, at least while the child was under the dominion of the parent, cause a court of equity to scan the agreement closely. So, too, the fact that the transaction did not represent the real purpose of the grantor to make the conveyance complained of might be of much importance. It must be affirmed, however, that these circumstances, when considered singly or in combination, are not the legal equivalent of fraud.

Appellant was the plaintiff below, and whatever facts are not found must be presumed to have been found against him. *Maxwell* v. *Wright* (1903), 160 Ind. 515. In that case it was said, relative to a special finding, that if the "finding leaves some issue or material fact undetermined, such issue or fact will be regarded as not proved by the party having the burden of proof." The burden of proving the issue devolved upon a party never shifts, although the burden of producing evidence to satisfy the court or jury may shift during the trial. *Fay* v. *Burditt* (1882), 81 Ind. 433, 42 Am. Rep. 142; *Carver* v. *Carver* (1884), 97 Ind. 497; 4 Wigmore, Evidence, §2489. If, therefore, the court has not found enough of the ultimate facts to make out a case of fraud, we can only assume that they were not proved, and that appellees were successful in rebutting all adverse inferences which might have been drawn, as matters of fact, from that which is contained in the special findings.

The mere fact that a finding of certain facts might justify an inference of fraud or call on the defendants to show a fair contract will not aid appellant now, for we can not add to a special finding a fact unless it results as a necessary conclusion from the facts found. Aside

from the facts that the sale was of a reversionary interest, that the consideration was paid to another, and ultimately was turned over to the grantor's mother, there are no facts found to militate against the burden which the appellant assumed when he became a plaintiff in the suit, except that the stepfather negotiated the sale, that said Zachariah had nothing to do with the negotiation except to execute the deed, and that he so executed the same to carry out his contract of sale with his stepfather and for no other purpose.

The transaction could not be said to have been fraudulent *per se,* even if the son had made a voluntary deed, upon a nominal consideration, of his interest to his mother. It was said in the syllabus to *Jenkins* v. *Pye* (1838), 12 Pet. 241, 9 L. Ed. 1070: "To consider a parent disqualified to take a voluntary deed from his child, without consideration on account of their relationship, is opening a principle at war with all filial, as well as parental, duty and affection." The finding that the grantor had nothing to do with the negotiation and that he executed the deed for the sole purpose of carrying out his contract is not the equivalent of a finding that he was not acquainted with the contents of the deed, which contained an express recital that he was conveying his expectancy, and no excuse appears for his failure to understand the deed, if there was such failure. So far as we are able to say, said grantor may have been fully apprised of the contents of the deed, while yet he executed it for the sole purpose, so far as he was concerned, of carrying out his contract. He may have been indifferent to his expectancy, or, while joining in the deed for the purpose of carrying out his contract, he may have been content that the deed should contain the further provision, because his mother was receiving the purchase money. This brings us to the proposition

19. respecting the lack of consideration, that the transaction might, as between appellant and his mother, have been in the nature of a family transaction, which is favored in equity. *St. Clair* v. *Marquell* (1903), 161 Ind. 56; *Eiss-*

ler v. Hoppel (1902), 158 Ind. 82. In Bellamy v. Sabine (1847), 2 Phillips *425, *439, the court said: "It has often been decided that in such transactions between a father and son, the ordinary rules which are applied to the acts of strangers, are not to regulate the judgment of this court. In such cases apparent inadequacy of consideration, and the circumstance that the property was reversionary have little weight. Fraud will indeed vitiate these as well as other transactions, but arrangements between members of the same family to assist their several objects or relieve their several necessities, are affected by so many peculiar considerations, and are influenced by so many different motives, that they have been wisely withdrawn from the influence of the ordinary rules by which this court is guided in adjudicating between other parties." We do not know the age of said grantor, or the measure of his business experience, or whether he was in any respect under the dominion of his mother or stepfather. The findings fail to advise us of any of the many conceivable circumstances which might have appeared in evidence tending to show the utmost good faith upon the part of the purchasers. Admitting, for the sake of the argument, that in some way said grantor might have failed to understand the nature of the transaction, yet it is conceivable that it might nevertheless have had, from the viewpoint of the grantees, every indicia of a fair bargain. As was said by Ashhurst, J., in Lickbarrow v. Mason (1787), 2 T. R. 63, 70: "We may lay it down as a broad general principle, that, wherever one of two innocent persons must suffer by the acts of a third, he who has enabled such third person to occasion the loss must sustain it." There is a great hiatus between the legal effect of the facts found and the ultimate facts which in such a case as this would be necessary to warrant the conclusion that appellant was the owner of the land, and therefore the judgment should be affirmed.

It is so ordered.