McBRIDE, Judge.
Victor A. Leaveau and the widow in community and heirs of Norman V. Leav-eau brought this action seeking to have the boundary between their property and the adjoining property of Henry Primeaux, Sr., established and to have the said defendant relocate a chain link fence separating the respective estates of the parties.
The defendant makes denial that his fence encroaches on plaintiffs’ land and challenges plaintiffs’ right to question the boundary of his property which he alleges he purchased from Victor A. and Norman V. Leaveau. He has filed a formal plea of estoppel.
The court-appointed surveyor, E. L. Eustis, made a survey and determined the boundaries and limits between the properties of the respective owners, and filed with the court his proces verbal and a plan depicting his determination of the boundary line.
After a trial of the case on the merits, the lower court fixed the boundary in accordance with Eustis’ determination thereof and recognized plaintiffs’ right to remove to the boundary line so fixed the fence now encroaching on their property. Defendant has appealed.
Victor A. and Norman V. Leaveau acquired all of the property in question, i. e., the contiguous estates, in the year 1938. Their purchase consisted of Lots 37, 38, 39' and 40 of Square 56, Third District of New Orleans, bounded by Selma Street, St. Roch and Mirabeau Avenues, and Spain Street, each lot having a frontage of 25 feet on Spain Street, by 120 feet in depth, Lot No. 40 commencing 200 feet from Mirabeau Avenue. At the time of the purchase there was a single cottage located on Lots 37 and 38, with a garage on the rear portion of Lot 38. Lots 39 and 40s *306 were vacant and unimproved. Sometime during 1940 the Leaveaus caused a double cottage to be constructed on Lots 39 and 40 with a garage located on the rear of Lot 39, which premises they rented to a Mrs. Bologna. This tenant, for some reason or other, erected a wire fence between the double house she rented and the property of the Leaveaus, or, in other words, between Lots 38 and 39. Subsequently, in 1940 (C.O.B. 511 folio 649) the Leaveau brothers borrowed money from a local building and loan association, giving as security a vendor’s lien mortgage on all four lots, that is to say Nos. 37, 38, 39 and 40, and the improvements thereon.
The first survey of the four lots contained in the record was made at the request of Victor A. and Norman V. Leaveau by S. E. Calongne of S. A. Calongne’s Sons, Civil Engineers, on August 14, 1938, at which time it should be recalled the only improvements were then located on Lots 37 and 38. This plan is referred to in and attached to the act of sale whereby the Leaveaus initially acquired title to the property. Calongne’s plan shows the relative positions of the dwelling on said two lots and the garage in the rear of Lot 38. The plan also shows Lots 39 and 40 as vacant property with no fence dividing Lot 38 from Lot 39.
For the purpose of facilitating their loan transaction with the building and loan association, the Leaveaus on August 7, 1940, requested Calongne to revise his former plan by showing thereon the double house and garage since erected on Lots 39 and 40. The surveyor made this revision by superimposing on his previous plan the location of said improvements on Lots 39 and 40; otherwise, the revised plan is exactly the same as the original survey. Specifically shown on the revised plan is a fence running along the line dividing Lot 38 from Lot 39, and this undoubtedly is the fence which Mrs. Bologna had erected to separate the property she had rented from the other property of the Leaveaus. The revised plan of Calongne, which bears the date August 14, 1938 — August 7, 1940, is referred to in and made part of the resale by the building and loan association to Victor A. Leaveau and Norman V. Leaveau.
On January 29, 1947, by authentic act (C.O.B. 552 folio 173), Henry Primeaux, Sr., and wife purchased from Victor A. Leaveau and Norman V. Leaveau Lots 39 and 40, together with all of the buildings and improvements thereon and all of the rights, ways, privileges, servitudes, and appurtenances thereunto belonging or in anywise appertaining, " * * * all as per blue print of survey made by S. A. Calongne’s Sons, Civil Engineers and Surveyors, dated August 14, 1938 * * The measurements contained in the description in the act of sale of the two lots coincide precisely with the measurements shown by the plan.
Why, when selling the property to Mr. and Mrs. Primeaux, the notary referred to the first survey made by Calongne rather than his revised plan is a matter of which we have no knowledge, but in passing we might state that counsel for defendant contend the notary public made an error.
Next in chronology is the fact that in 1948 Primeaux replaced Mrs. Bologna’s wire fence with a chain link fence. The Leaveaus made no obj ection to such change, but, on the contrary, consented thereto and even contributed one half of the cost of the new fence. The evidence is convincing that Primeaux’ fence was positioned exactly on the same line as the old one.
On May 29, 1954, a surveyor named Krebs surveyed Lots 37 and 38, his plan being dated May 29 of said year, and it shows that the aforementioned chain link fence Primeaux erected encroaches on Lot 38 for a distance of 10 inches at the end of the fence nearest Spain Street and 1 foot 7 inches 4 lines at the other end of the fence. Demands were made upon Prim-eaux to remove the fence to no avail— hence this suit.
The trial judge predicated his judgment on Eustis’ determination of the boundary, *307 and while both the Eustis plan and the Krebs plan show the fence encroaches on Lot 38, these surveyors do not agree as to the extent of the encroachment. However, be that as it may, in view of our conclusions in the case, it is not necessary for us to say whether Eustis is right or wrong in his calculations or in his final determination as to where the boundary line should be located.
The judgment appealed from is clearly erroneous as the plea of estoppel is valid and the suit should have been dismissed. When Primeaux bought Lots 39 and 40 from the Leaveau brothers, they sold the two lots and improvements to him with full warranty of title and in conformity with the first survey of the property made by Calongne on August 14, 1938. The sale was made with the vendors well knowing there was a fence located along exactly what surveyor Calongne said was the boundary line between the estates, as they had in their possession the revised plan of Calongne of August 7, 1940, explicitly showing the existence and location of said fence. Then, also, there is the circumstance of the Leaveau brothers joining with Primeaux in erecting the present fence which, as we have already said, rests on the line as established by Calongne and replaced the first fence which had been erected to serve as the dividing line by Mrs. Bologna while she occupied the property now owned by Primeaux.
In view of all this, our firm opinion is that the plaintiffs are effectively estopped and precluded from making any claim or pretense that the line dividing the respective properties of the parties as shown on Calongne’s survey and marked by the present fence existing on said line is not the true boundary. Primeaux purchased according to Calongne’s plan with full warranty from his vendors, and the Leaveaus, or those who may claim under them, cannot now reverse their position and assert a claim that the boundary line so established is incorrect or that Primeaux did not acquire the land under fence. Where a party in an authentic act executed by him solemnly admits a fact, he is forever estopped from disputing not only the deed itself but every fact which the deed recites. Such estoppel by deed applies with greater force when the warranty made by a grantor is involved.
In Lewis v. King, 157 La. 718, 103 So. 19, 22, the Supreme Court of our state said:
“ ‘Estoppel by warranty is an estoppel based on the principle of giving effect to the manifest intention of the grantor appearing on the deed, as to the lands or estate to be conveyed, and of preventing the grantor from derogating from or destroying his own grant by any subsequent act.’ 21 C.J. p. 1061; Condit v. Bigalow, 64 N.J.Eq. 504, 513, 54 A. 160.
“It is a species of estoppel by deed. A party to a deed, and his privies, are estopped from denying the truth of any material fact asserted in it. Fields v. Willingham, 49 Ga. 344; McAdams v. Bailey, 169 Ind. 518, 82 N.E. 1057, 13 L.R.A.,N.S., 1003, 124 Am.St.Rep. 240; Cornelius v. Kinnard, 157 Ky. 50, 51, 162 S.W. 524.”
See, also, Gaines v. Crichton, 187 La. 345, 174 So. 666, and Sandifer v. Sandifer’s Heirs, La.App., 195 So. 118.
Although not mentioned by counsel for plaintiffs, this case involves more than the removal of a fence, and if the boundary line should be fixed in accordance with the survey of Eustis, then dire results would ensue, as Eustis’ plan shows that not only does the fence encroach on Lot 38, but it also shows that his dividing line runs through a part of the garage which the Leaveaus had erected on Lot 39 and which was one of the improvements they sold to Primeaux. Great hardship would come to the defendant.
The judgment appealed from cast the defendant not only for the costs of the *308 suit but for the $300 fee allowed Eustis for the survey and preparation of his plan, but our opinion is that all costs, including the cost of the official survey, should be borne by the plaintiffs.
For the reasons above assigned, it is ordered, adjudged and decreed that the judgment appealed from be avoided and reversed, and that there be judgment in favor of defendant dismissing plaintiffs’ suit, plaintiffs to bear the costs of both courts and also the official surveyor’s fee.
Reversed.