## HELEN M. HOYT *v.* EDWIN HOYT.

### *Chancery.* Post-obit. *Contracts.*

1. An agreement among heirs, made before the death of the ancestor, may be enforced in equity after his death, where it has been so acted on that to refuse such relief would be inequitable.

2. O. conveyed a part of his real estate to his two sons, M. and E., upon condition that they should support him during his natural life and pay him an annuity; and the remainder to his other son, J., in consideration of $2,000, secured by mortgage on the premises conveyed. Subsequently, and during the lifetime of O., the oratrix, who was the widow of J., released by deed her interest in the annuity to M. and E., and M. and E. by deed released their interest in the mortgage to her, upon condition that she should be to one-third the expense of O.'s support, as she continued to be until his death. O. in his lifetime began a foreclosure of the mortgage, which was prosecuted to final decree by his administrator. The premises went under this decree, and one-third thereof was assigned to the defendant. *Held,* that equity would compel a conveyance of this interest to the oratrix.

This was a bill in chancery brought by the oratrix, Helen M. Hoyt against Edwin Hoyt, to compel the conveyance by the defendant of his interest in certain real estate, and was heard at the June Term, 1888, on pleadings and master's report. Chancellor Royce dismissed the bill, *pro forma.* The oratrix appeals.

*Hard & Cushman,* for the oratrix.

This contract between the heirs of Orin Hoyt was made in good faith, and on the strength of it the oratrix has expended in money and services an amount greater than the defendant's interest in this real estate. Having had the benefit of this agreement, the defendant should now be compelled to carry out his part of it.

*Henry S. Foote,* for the defendant.

The mortgage on the land in question was personal estate in the hands of the administrator of Orin Hoyt. This bill is in effect as to such mortgage, and cannot be maintained.

The original contract was with reference to chattels, and equity will not decree a specific performance. *Pierce* v. *Brown*, 24 Vt. 165; *Collamer* v. *Landon*, 29 Vt. 32; R. L. s. 2150; *Goodwin Gas Stove and Meter Co.* v. *Goodwin*, 10 Cent. Rep. 761; *Diamond State Iron Co.* v. *Todd*, 12 Cent. Rep. 342.

The opinion of the court was delivered by

TYLER, J.   It appears by the master's report that October 6th, 1876, Orin Hoyt, jointly with his wife, conveyed a portion of his real estate to his sons, Edwin and Martin, in consideration that they should support the grantor and his wife during life and pay them an annuity of $60, and the remaining portion to his son Julius C., for the consideration of $2,000, as expressed in the deed, the grantee, as a part consideration for the convey-ance, giving the grantor five promissory notes of $200 each, secured by a mortgage on the land conveyed to him.   These three sons were the only children.

April 7th, 1879, after the decease of the grantor's wife and of their sons Martin and Julius, the oratrix executed a release to Edwin and the administrator of Martin, of all her interest and that of her heirs in the moneys that might accrue from said annuity at the time of the grantor's decease, and Edwin and said administrator executed a like release to her of all the interest they then had or might have in the notes and mortgage, in con-sideration that the oratrix would bear one-third of the expense of supporting the grantor during his life and one third of the expense of burial and headstones.   These releases were made at the same time and were parts of one agreement.

. It does not appear why the oratrix, instead of her husband's administrator, was a party to the agreement, but it does appear that she acted in behalf of her children.

.Orin Hoyt being in life when the agreement was made, the annuity, notes and mortgage were his property, and the releasors had no ownership or control of them.   They had an expectant interest in them, for, if the annuity were paid and the annuitant died intestate, the children of the oratrix would take a distribu-

tive share in the amount. Likewise, the defendant and the administrator of Martin held expectant interests in the mortgage notes. The purpose of the parties was to relinquish their prospective shares in the property by releasing each other from the payment of the annuity and notes out of which such shares might arise, and to free the oratrix's land of the encumbrance upon her assuming one-third of the grantor's support. They doubtless assumed that at his age and in his condition of mind he would only require his support, and did not anticipate that he would intervene with suits to foreclose his mortgage and collect his annuity. It appears, however, that he did foreclose his mortgage, that the foreclosure suit was prosecuted to a final decree by his administrator after his decease, and the land not being redeemed, went back into his estate; also, that a suit was brought to recover the annuity, that a judgment was rendered therein against the defendant, which he paid, together with the sum of $24, which subsequently accrued.

In March, 1887, Orin Hoyt having deceased, the releasors were in this situation in regard to the property: The oratrix had lost her land by decree of foreclosure, ten acres of it had been sold by Orin's administrator; the defendant had been compelled to pay $521.16 on account of the annuity which he and Martin had assumed; by decree of the Probate Court he had acquired title to one-third of the remainder of the mortgaged premises; the children of the oratrix had acquired title to another third by the same decree, and the Probate Court, in pursuance of a conveyance to her by the heirs of Martin, had decreed to the oratrix the remaining third. The conveyance by Martin's heirs to the oratrix was presumably in compliance with the agreement of April 7th, 1879. Her services and expenses by reason of her fulfilment of her part of the agreement, amounted to $533.33, exclusive of interest. The question is whether the defendant should be compelled to convey his third part of the premises to the oratrix according to the prayer of the bill.

The oratrix does not ask a decree for a specific performance of the defendant's part of the contract, but that he, having

Hoyt *v.* Hoyt.

involuntarily acquired an interest which he once relinquished in Orin Hoyt's estate, should now be compelled by decree of this court to release that interest to her.

The agreement was wholly in relation to personal property. By R. L. s. 2150, a debt secured by mortgage, with the mortgaged premises, belonging to the estate of a deceased person as mortgagee, when such mortgage was not foreclosed in the lifetime of the deceased, are made personal assets in the hands of the executor or administrator, and are to be administered and accounted for as such.

It is true, as claimed by defendant's counsel, that no one but Orin Hoyt could have made an agreement operative to convey a then present interest in the annuity and notes, but, treating the releases as conveyances, were they effectual to convey the interest which the releasors subsequently acquired therein?

At common law agreements for the sale of expectancies are generally held to be pernicious and void, because they offer temptations to heirs to anticipate the enjoyment of property by making disadvantageous bargains, which tend to their harm and to involve the name and character of the family. They are also considered to be a fraud on the ancestor from whom is the expectancy of the estate, for the reason that the conduct of the heir and the fact of the sale of the expectancy is not generally disclosed to him, and he is thereby misled into leaving his estate to strangers instead of his own heirs or family, when, had he known of the transaction he might, by a will, have provided against his estate being thus diverted. They are sometimes held void as being in the nature of wagers and therefore contrary to good morals and sound public policy. See the opinion of Parsons, Ch. J., in *Boynton* v. *Hubbard*, 7 Mass. 112, in which this subject is ably and fully discussed. In that case the defendant, for certain advances of money made to him by the plaintiff, covenanted with the plaintiff that if he, the defendant, should survive one T. H., he would pay over and convey to the plaintiff one-third part of all the real and personal estate that might descend to the defendant as an heir to said T. H. The defendant did survive said T. H.,

Hoyt v. Hoyt.

from whom a large estate descended to him, and he came into possession thereof. On his refusal to convey the same the plaintiff brought his action on the covenant. The court declared that the covenant was a fraud on the ancestor, productive of public mischief and void. In later cases in Massachusetts it has been held that when the covenant is made fairly, on an adequate consideration, with the consent of the ancestor, it should be sustained. *Fitch* v. *Fitch*, 8 Pick. 479 ; *Trull* v. *Eastman*, 3 Met. 121 ; *Jenkins* v. *Stetson*, 9 Allen, 128 ; see, also, *Hall* v. *Chaffee*, 14 N. H. 215, wherein the common law rule is well stated ; Benjamin on Sales, 81, notes.

In the English Court of Chancery the decisions on this subject have not always been in consonance. In *Batty* v. *Lloyd*, 1 Vern. 141, the defendant agreed with the plaintiff, who was to have an estate fall to her upon the death of two old women, to give £350 in consideration of being paid £700 at the death of the two women, the plaintiff to secure the payment of the latter by a mortgage of her reversionary estate. The two women died within two years afterwards, and a bill was brought by the plaintiff praying to be relieved from the bargain. The Lord Keeper said, "I do not see anything ill in this bargain. I think the price was the full value, though it happened to prove well. Suppose these women had lived twenty years afterwards, could Lloyd have been relieved by any bill here ? I do not believe you can find me any such precedent." *Nott* v. *Hill*, 1 Vern. 167. In *Thomas* v. *Freeman*, 2 Vern. 563, it was held that a possibility might be released though it could not be assigned. In *Beckley* v. *Newland*, 2 P. Williams, 181, two persons articled that whatever sum a third person should, by his will, leave to either of them should be equally divided between them, and the agreement was sustained. *Hobson* v. *Tenor*, 2 P. Williams, 191. In 1 Madd. Ch. 118, it is said that an expectancy may be sold, provided it be fairly sold, but that such contracts will generally be set aside for inadequacy of price on payment of principal, interest and costs. Fonb. Eq. s. 12.

(27)

In *Carlton* v. *Leighton*, 3 Merrivale, 667, the Lord Chancellor held that the expectancy of an heir presumptive or apparent (the fee simple being in the ancestor) was not an interest or a possibility, nor was it capable of being made the subject of assignment or contract, and said that the cases cited in support of such contracts were cases of covenant to settle or assign property which should fall to the covenantor, when the interest which passed by the covenant was not an interest in the land, but a right under the contract.

It is to be expected that in England, where estates descend to the oldest son, the courts would be more inclined to hold such contracts void in order to prevent estates from falling into the hands of strangers, than the courts of this country, where estates fall to all the children alike; and yet the general current of the English equity cases is that these contracts, when fairly made, and for an adequate consideration, and the expectancy is not so remote and contingent that the contract becomes a mere wager, they will be sustained.

Chancellor Kent, 4 Com. 261, states the rule in this country as follows: "All contingent and executory interests are assignable in equity, and will be enforced if made for a valuable consideration; and it is settled that all contingent estates of inheritance, as well as springing and executory uses and possibilities coupled with an interest, when the person to take is certain, are transmissible by descent and are devisable and assignable. A mere naked possibility, without being coupled with an interest, cannot be assigned, but if the possibility be coupled with an interest, as when a person who is to take upon the happening of the contingency is ascertained and fixed, such a possibility may be released, devised or assigned, like any other estate in remainder." *Jackson* v. *Waldron*, 13 Wend. 178.

Judge Story, 2 Com. on Eq. s. 344, after a full discussion of this subject, says: "From what has been already said it follows as a natural inference that contracts of this sort are not in all cases utterly void, but they are subject to all real and just equities between the parties, so that there shall be no inade-

quacy of price and no inequality of advantages in the bargain. If in other respects these contracts are perfectly fair, courts of equity will permit them to have effect as securities for the sum to which *ex æquo et bono* the lender is entitled ; for he who seeks equity must do equity, and, therefore, relief will not be granted upon securities except upon equitable terms."

In s. 343, the learned author, after stating that such contracts are in general a fraud upon the ancestor, remarks : "It might be very different if there was a fair though a secret agreement among all the heirs to share the estate equally, for such an agreement would have a tendency to suppress all attempts of one or more to overreach the others, as well as to prevent all exertions of undue influence." This very nearly supposes the facts in the present case. The contractors knew that the estate of Orin Hoyt consisted of the amount of the annuity and the mortgage notes. If they had not made the agreement, each at Orin's decease would have been entitled to one-third of the estate, the defendant in his own, and the other two in their representative capacity. Each gave up a one-third interest in the estate and assumed one-third of Orin's support, the oratrix taking upon herself a burden that the law did not impose, and relieving the others of a portion of theirs. The bargain was a fair one and upon an adequate consideration ; it was not a fraud upon Orin Hoyt, it in no way contravened public policy, and should be sustained.

It appears by the report that of the $220 received by the administrator from the sale of the ten acres of land, and the $521.16 collected by him of the defendant on the annuity, $660.36 was required to pay the debts against Orin's estate, leaving $80.80 in the administrator's hands for future expenses; therefore, the mortgaged premises contributed one-third part toward the payment of the debts.

One-half of the burden of Orin's support originally rested on the defendant and the oratrix relieved him of one-third of that burden, or one-sixth of the entire support. One-half of her charges was for her services and disbursements for the defendant's

benefit and relief. Those charges, with interest to February 1,. 1889, according to the computation of her counsel, which we think equitable, amount to $750.42. One-half of that sum,. $375.21, constitutes an equitable lien on the defendant's one-third of the premises, the value of which third is found to be $366.67.

The decree of the Chancellor dismissing the bill is reversed and the cause remanded under a mandate that the defendant,. within a time to be fixed by the Chancellor, pay to the oratrix the sum of $375.21, with interest from the first day of February,. 1889, together with costs of this suit; or that he shall, within a certain other time thereafter, to be fixed by the Chancellor, convey all his right, title and interest in the premises to the oratrix,. according to the prayer of the bill.