MILLER et al. v. MILLER et al.    (No. 11377.)

(Court of Civil Appeals of Texas. Fort Worth. Feb. 6, 1926. On Motion for Rehearing March 13, 1926. Rehearing Denied May 1, 1926.)

1. **Descent and distribution** ⟷82—Contract between children for disposition of an expected inheritance from their mother held valid, though no showing was made that mother had notice of it and consented thereto.

Contract between the children for disposition of an expected inheritance from their mother, made in good faith and for a valuable consideration and not being contrary to public policy, *held* valid, even though there was an absence of showing that mother had notice of it and consented thereto.

2. **Descent and distribution** ⟷82—Contract between children for disposition of an expected inheritance from mother, by which defendant agreed that land should be partitioned equally, held to be an executory contract by defendant that other children should be vested each with title to their respective interests in land.

Contract between children for disposition of an expected inheritance from their mother, by which defendant agreed that at her death her

interest in tracts of land should be partitioned between parties equally *held* not a quitclaim deed, but to constitute an executory contract by defendant that other children should as between parties to instrument be vested each with title to respective interests in such tracts of land.

**3. Descent and distribution ⬤⟿82—Contract between children for disposition of expected inheritance from their mother, by which defendant agreed that land should be divided equally, implied a contract by defendant to warrant to other children title to their respective interests in the land.**

Contract between children for disposition of an expected inheritance from their mother, by which defendant agreed that on her death her interest in tracts of land should be partitioned between parties equally, implied a further contract on his part to warrant to the other children title to their respective interests in such property.

**4. Estoppel ⬤⟿38—Term "warranty," as applied to deed of conveyance, designates vendor's contract which operates to pass to vendee a title outstanding against property at time of conveyance whenever same is acquired.**

The term "warranty," as applied to a deed of conveyance, merely designates contract of vendor which operates to pass to vendee a title outstanding against the property at time of conveyance whenever same is acquired by grantor thereafter.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Warranty.]

**5. Trusts ⬤⟿95—Under contract between children for disposition of an expected inheritance from the mother by which defendant agreed that property should be divided equally, defendant acquiring property from the mother would be deemed in equity as holding legal title in trust for benefit of other children.**

Under contract between children for disposition of an expected inheritance from their mother by which defendant agreed that her interest in property on her death should be partitioned between the parties equally, defendant acquiring property from the mother by deed and will would be deemed in equity as holding legal title to the property in trust for benefit of other children.

**6. Limitation of actions ⬤⟿46(3)—Cause of action for breach of contract between children for disposition of an expected inheritance from their mother held not to accrue until date of her death, and hence suit filed within two years thereafter was not barred by limitations.**

Under contract between children for disposition of an expected inheritance from their mother by which defendant agreed that property should be on her death partitioned between parties equally, children's cause of action for breach of contract did not accrue until date of their mother's death, and hence suit filed within two years thereafter was not barred by four-year statute of limitation.

**7. Limitation of actions ⬤⟿103(4)—In action for breach of contract to equally divide expected inheritance of property, defendant's possession held not to support plea of limitations, where it was not inconsistent with interest claimed by other children and defendant occupied position of trustee and gave no notice that he had repudiated trust.**

In action for breach of contract between children for disposition of an expected inheritance from their mother by which defendant agreed that property should be divided equally at her death, in that defendant acquired title to property from the mother by deed, defendant's possession of property *held* not to support his plea of limitations, since in holding legal title his possession was not inconsistent with the contract, and, though occupying position of trustee for children's benefit, he gave no notice to them that he had repudiated trust and had elected to hold property adversely to them.

On Further Motion for Rehearing.

**8. Partition ⬤⟿8—On partition of land derived from same source of title and title to the whole failing, there is no warranty of title in favor of any of the parties to whom allotments are made as against an outstanding title superior to title partitioned.**

If a tract of land is partitioned between several parties owning an undivided interest therein, derived from same source of title, and title to whole fails, then there is no warranty of title in favor of any of parties to whom allotments are made as against an outstanding title superior to title partitioned, since no consideration passes to any of parties to the partition.

**9. Partition ⬤⟿8—If title to only a portion of property partitioned fails by reason of a superior outstanding title, party losing thereby is entitled to contribution from other parties to partition.**

If title to only a portion of property partitioned failed by reason of a superior outstanding title, then party losing thereby is entitled to contribution by other parties to the partition upon theory of an implied warranty of title from them, since party losing has surrendered to others a valuable consideration in his undivided interest in the remainder of the property, title to which is valid.

**10. Estoppel ⬤⟿78(3)—Contract by which defendant agreed that expected inheritance of property should be divided equally between children held to estop him to assert after-acquired legal title to the property as against other children.**

Under contract between children for disposition of an expected inheritance from the mother by which defendant agreed that property at her death should be partitioned between parties equally, defendant *held* estopped to assert after-acquired legal title to property as against other children, especially where he asserted same as a defense to plaintiff's suit for breach of agreement without tendering back title which they conveyed to him in the remainder of the tract as a consideration for the contract.

Appeal from District Court, Johnson County; Irwin T. Ward, Judge.

Suit by Frederick James Miller and others against William Gordon Miller and others, in which defendants filed a cross-action. Judgment for defendants, and plaintiffs appeal. Reversed and rendered.

Capps, Cantey, Hanger & Short, of Fort Worth, for appellants.

Walker & Baker, of Cleburne, and S. C. Padelford, of Fort Worth, for appellees.

DUNKLIN, J. The following statement taken from appellants' brief is a correct statement of the facts developed upon the trial of this case:

"This is a suit originating in the district court of Johnson county between Frederick James Miller, Elizabeth E. Webb, a widow, and John Semans Miller, plaintiff in the court below, appellants herein, and William Gordon Miller and Daniel Holford Miller, defendants in the court below, and appellees herein. The suit in the main involves the title to approximately 260 acres of land in Johnson county and the validity and effect of a certain written agreement dated July 2, 1915, executed by W. G. Miller with the other parties to this suit. Daniel Holford Miller was merely a nominal party to the suit and disclaimed any interest in the lands involved, leaving the real controversy between Frederick James Miller, Elizabeth E. Webb, and John Semans Miller, appellants herein, on the one hand, and William Gordon Miller, appellee herein, on the other hand.

"The record discloses that the substantial rights of the parties arose upon practically undisputed evidence. There was some conflict in the testimony concerning the equities between the parties arising out of the use and possession of the lands by the appellee to the exclusion of the appellants, which becomes material only in event the contention of appellants concerning their substantial rights prevail. These issues were submitted to the jury, and the jury's findings thereon are disclosed in the record and will be hereafter adverted to.

"All of the parties to this suit are brothers and sisters. Frederick Miller, the deceased father of the parties, died on April 29, 1915. His widow, Elizabeth R. Miller, mother of the parties hereto, survived him and died on July 16, 1919. Previous to the death of Frederick Miller, he and his wife, Elizabeth R. Miller, owned as community property lands involved in this suit. Frederick Miller died testate, and his will was probated in the county court of Johnson county on July 9, 1915. At the time of his death, the lands involved in this suit were the only community lands of himself and his wife, and in fact were the only lands owned by either of them. The will of Frederick Miller, as probated in Johnson county, is as follows:

" 'As my wife possess a community interest in the property (which are valuable) also my life insurance being in her name she is provided for, I leave her what personal property I may possess;

" 'In consideration of his very large family of young children and having no home of his own I will my interest in the properties known as the T. J. Mills survey and the E. R. Miller survey, both being in the county and state aforesaid, to my son William Gordon Miller, his heirs or assigns for the period of five years from the time of my death, he to pay all taxes and to keep the properties in good order, also to pay George Webb (Senior) the sum of one hundred dollars within twelve months after coming into possession of the aforesaid properties;

" 'At the expiration of the aforesaid five years, I will my interest in the said properties T. J. Mills survey and the E. R. Miller survey, both being brought forward in the county and state aforesaid, to my five children, namely, Elizabeth E. Webb, the wife of George Webb; Frederick James Miller, Daniel Holford Miller, William Gordon Miller and John Seman Miller, their heirs or assigns forever, in equal shares to each, to be divided as they see fit.

" 'Should my wife outlive me and come into possession of my life insurance money, I ask her to pay George Webb, his heirs or assigns, the sum of one hundred and fifty dollars, being an old matter between us, if otherwise and my children come into possession of said life insurance money I ask them to pay George Webb the said amount of one hundred and fifty dollars.'

"Appellee William Gordon Miller (hereafter referred to as W. G. Miller for convenience) was dissatisfied with the will of his father, and negotiations between him, on the one hand, and principally with appellant Frederick James Miller as representative of the other children, on the other hand, resulted in the consummation of an agreement between all of the children. This agreement was in writing, signed by W. G. Miller before a notary public on July 9, 1915. At the time the contract was executed, W. G. Miller, Frederick James Miller, and their respective attorneys were present. In view of the importance of this agreement, the body thereof is set out in full:

" 'Whereas, heretofore, to wit, April 29, 1915, my father, Frederick Miller died in Johnson county, Tex., leaving a last will and testament of date October 12, 1910, and a codicil of date March 16, 1915, whereby he bequeathed to his wife, Mrs. E. R. Miller, all his personal estate, and devised to me, William Gordon Miller, his one-half interest in and to the E. R. Miller survey in Johnson county, Tex., and the Thomas J. Mills survey, also in Johnson county, Tex. (less 68 acres heretofore deeded by P. J. Willis and brother and Leon and H. Blum, to D. Hobart Hills on the first day of September, 1880, by deed recorded in Book U, page 475, deed records of Johnson county, Tex.), for a period of five years on condition that I shall pay all taxes and keep the said properties in good order and pay George Webb, Sr., the sum of one hundred dollars ($100.00) within twelve months after coming into possession of said property, and providing that said property at the expiration of said period of five years shall be divided equally between myself, my sister Elizabeth E. Webb, wife of George Webb, and my brothers Frederick James Miller, Daniel Holford Miller, and John Seaman Miller; which said will and codicil has been presented for probate in the county court of Johnson county, Tex., by said Frederick James Miller and Daniel Holford Miller, who by said will were named independent executors thereof without bond, and will be probated as the last will and testament of said Frederick Miller, in due course of time, and;

" 'Whereas, I, the said William Gordon Miller am claiming a large indebtedness against the said estate of Frederick Miller, deceased, arising principally out of money claimed by me to have been advanced to said Frederick Miller, and for improvements erected on the aforesaid property; and my said father Frederick Miller was surety for me on a certain note in the sum of eight hundred eighty dollars ($880.00), payable to the Continental State Bank of Burleson, Tex., which said note is unpaid, and;

" 'Whereas, my said brothers Frederick James Miller, Daniel Holford Miller and John Seaman Miller, and my said sister, Elizabeth E. Webb, joined by her husband, George Webb, in consideration of my contract and agreement herein contained, have executed to me and delivered concurrently with the delivery of this contract and agreement on my part, their certain deed conveying to me their interest in and to the said E. R. Miller survey and said Thomas J. Mills survey which they would, at the end of the five-year period named in my father's said will, have come into possession of under and by virtue of said will (the interest deeded by my said sister and by each of my said brothers being an undivided one-fifth interest in and to my father's undivided one-half interest in and to the aforesaid real estate).

" 'Now, therefore, I, William Gordon Miller of the county of Johnson, state of Texas, for and in consideration of the execution and delivery to me of the deed aforesaid, have contracted and agreed and do hereby contract and agree with my said sister Elizabeth E. Webb and my said brothers Frederick James Miller, Daniel Holford Miller and John Seaman Miller as follows, to wit:

" '(1) That I have released and do hereby release any and all claims of whatsoever nature or character which I may have against my said father's estate or against any person whomsoever for and on account of any money whatsoever advanced to my said father Frederick Miller, or which I may have heretofore advanced, or which I may hereafter advance for or on account of improvements erected, constructed or made on the aforesaid E. R. Miller survey, and the said Thomas J. Mills survey, less the sixty-eight acres deeded to D. Hobart Hills as above mentioned; or any claim which I may have against said real estate;

" '(2) That I will pay or cause to be paid off, the aforesaid eight hundred eighty dollars ($880.00) note owing by me to the said Continental State Bank of Burleson, Tex., and on which my father was surety, and will hold the estate of my said father harmless against any liability thereon, and will also pay to George Webb the sum of one hundred dollars ($100.-00) as provided in said will.

" '(3) That I will pay all taxes on the aforesaid E. R. Miller survey, and the said Thomas J. Mills survey (less the sixty-eight acres aforesaid deeded to D. Hobart Hills), and keep the said property and improvements in good condition and that I will present no character of claim against the estate of my mother, when she shall decease, of any kind, character or nature; and that I will hold my said mother and her estate when she shall decease, forever harmless against any character of claim incurred by me whatsoever, the provisions of this contract being expressly made for the benefit of my said sister and brothers, who, together with myself, will inherit my said mother's estate at her decease.

" '(4) That at the time of the decease of our said mother, Mrs. E. R. Miller, the aforesaid real estate shall be partitioned between me and my said sister and brothers, or their heirs, if any one or more be deceased, and that in making partition of said property between me and them, the undivided one-half interest owned by our mother, the said Mrs. E. R. Miller, shall be partitioned between the five of us (and the heirs if any, of any one or more which may be deceased) equally, and that in such partition I will make no claim whatsoever for or on account of improvements now or hereafter erected, constructed or made on said property by me.

" '(5) This contract and agreement is made on behalf of myself, my heirs and all persons whomsoever claiming by, from, through or under me.'

"In pursuance with this agreement, all four of the other children simultaneously executed and delivered to W. G. Miller their warranty deed to the entire undivided one-half interest in the property representing their deceased father's community share.

"Approximately 1½ months after the consummation of the agreement between W. G. Miller and the other children, and the execution and delivery of the deed from the other children to W. G. Miller, a warranty deed was obtained by W. G. Miller from his mother, Mrs. E. R. Miller, to her undivided one-half interest in the lands involved herein. This deed was dated August 26, 1915, and is found in the statement of facts.

"Frederick Miller and his wife, Elizabeth Miller, lived on the place for many years previous to Frederick Miller's death, and his widow continued to live thereon until her death. For a long time previous to Frederick Miller's death, W. G. Miller and his family had resided on the place with his father and mother, and continued to reside thereon with Mrs. E. R. Miller until her death and has occupied the land ever since. None of the other children had resided on the land for a number of years previous to their father's death.

"Mrs. E. R. Miller died testate, leaving a will probated in Johnson county, Tex., in which she made bequests to each, of the children, other than W. G. Miller, of $100 each and devised all of the residue of her property to W. G. Miller.

"The appellants refused to accept the special bequests under the will. Until after the death of Mrs. E. R. Miller, none of the appellants knew of the execution of the deed by her to W. G. Miller to the property involved therein, nor of the contents of her will.

"After the death of his mother, Frederick James Miller demanded performance of the contract by W. G. Miller, who refused to perform the contract and divide the land in accordance with the respective claims of the appellants. He is claiming adversely to the appellants the title to the entire undivided one-half interest in the lands representing his father's estate under the deed from appellants and Daniel Holford Miller made to him in pursuance with the agreement referred to, and is claiming the other undivided one-half interest adversely to appellants under the deed from Mrs. E. R. Miller, their mother, and under her will. D. H. Miller quitclaimed all interest to him in the land on July 9, 1921.

"All of the above facts which we have attempted to detail in a chronological order appear undisputed in the record, and this suit arises therefrom."

This suit was instituted by Frederick James Miller, Mrs. Elizabeth E. Webb, a widow, and John Semans Miller, against William Gordon Miller and also against Daniel Holford Miller, who afterwards filed a disclaimer of title. The first count in plaintiffs' petition was in the statutory form of an action in trespass to try title to recover for each of plaintiffs an undivided one-fifth of one-half interest in the lands described in the will and contract set out above as portions of the E. R. Miller survey and the Thomas J. Mills survey, situated in Johnson county, Tex.

In the second count of the petition, plaintiffs claimed the same interest in the property under and by virtue of the contract between them and the defendant William Gordon Miller, under further allegations that by reason of said contract and the acceptance by William Gordon Miller of conveyances by plaintiffs to him of their interests in said property devised to them by their father, he was estopped to claim title adversely to plaintiffs under the deed executed to him by their mother and also under the will in his favor by her. They further alleged that they had no knowledge of the execution of said deed by their mother, nor of any adverse claims by said defendant thereunder until after the death of their mother.

In a third count of that petition, it was alleged that William Gordon Miller procured the execution of the deed and will by his mother for the sole purpose of defrauding the plaintiffs out of their rights under the said contract with them, and that by reason thereof, and by reason of the further fact that plaintiffs had paid a valuable consideration for said contract, they prayed for a rescission of same and for a decree of court canceling their deeds to William Gordon Miller of the interest in said land which had been devised to them by their father, and plaintiffs also prayed for a recovery of the reasonable rental value of the land so conveyed to the defendant by them since the execution of said deeds.

The defendant William Gordon Miller filed a plea of not guilty and one of general denial. He also claimed title under the deed and will from his mother, both of which he alleged were executed freely and voluntarily by her, and at the time she executed the deed she was the owner in fee simple of an undivided one-half interest in the two tracts of land, which title was thereby conveyed to him. He further alleged that plaintiffs had actual and constructive notice of the execution of said deed which was dated August 26, 1915, and filed for record in the deed records of Johnson county on September 4, 1915, and also of his adverse claim of title thereunder, and he pleaded in bar of plaintiffs' action the

283 S.W.—69

statutes of limitation of two and four years; the suit having been instituted July 12, 1921. By cross-action the defendant sought to have the contract he had made with the plaintiffs, and referred to and copied above, canceled as a cloud upon his title.

The case was submitted to a jury on only two special issues, which, with the jury's findings thereon, are as follows:

"Q. What amount of his individual money did the defendant, William Gordon Miller, pay as part of the purchase price for the land in controversy, and for improvements of all description on said place, from 1885 until his father's death in 1915? Answer: $1,050.00.

"Q. What was the average cash rental value per acre per annum of the land in controversy for the years 1920, 1921, 1922, 1923, and 1924? Answer: $2.00 per acre per annum."

After the return of that verdict, a motion was made by each of the parties to the suit for the rendition of a judgment in favor of each of the movants. The court sustained the motion so made by the defendant, and rendered a judgment in his favor denying plaintiffs any right of recovery and decreeing title to the property in controversy in the defendant William Gordon Miller, and also decreeing a cancellation of the contract between plaintiffs and defendants upon which the suit was based as a cloud upon the title of William Gordon Miller. The plaintiffs have prosecuted this appeal from that judgment.

[1] The contract between plaintiffs and William Gordon Miller was between the children of Mrs. E. R. Miller for a disposition of an expected inheritance from her. It was made in good faith and for a valuable consideration paid by plaintiffs, and was therefore not contrary to public policy, but was a valid and binding contract even though there was an absence of showing that the mother had notice of it and consented thereto. Hale v. Hollon, 90 Tex. 427, 39 S. W. 287, 36 L. R. A. 75, 59 Am. St. Rep. 819; Barre v. Daggett, 105 Tex. 572, 153 S. W. 120; volume 1, § 377, Storey's Equity Jurisprudence (14th Ed.); volume 2, § 931, Pomeroy's Equity Jurisprudence.

[2] Appellee insists that his contract, to the effect that upon the death of his mother, Mrs. E. R. Miller, her undivided one-half interest in the two tracts of land in controversy should then be partitioned between the parties equally, and that he would then make no claim whatever against the property on account of improvements made by him thereon, was in legal effect nothing more than a quitclaim deed, without any warranty of title to the interest quitclaimed, which would operate in plaintiffs' favor upon the title thereafter acquired by the appellee by the deed from his mother and the will executed by her in his favor, which was duly probated, and therefore could not operate to trans-

fer the title thereafter acquired by him from his mother.

It is our conclusion that the contract was in no sense a quitclaim deed. It did not purport to pass any present interest in or title to the property. It plainly shows that the parties to the instrument then had no interest in the property and that they so understood that fact. It expressly recites the fact that the title to the property now in controversy was then vested in Mrs. E. R. Miller, their mother. In the absence of any deed of conveyance or devise by the mother, plaintiffs would have inherited the same interest in the property that William Gordon Miller, by the terms of the contract, agreed that they should have, and it is apparent that plaintiffs assigned to William Gordon Miller their interest in the remaining one-half of the property as a consideration for his contract that they each should, upon the death of their mother, have an undivided one-fifth interest in the property, for the sole purpose of avoiding the risk that William Gordon Miller might thereafter acquire the legal title to his mother's one-half interest in the land either by deed or will. And it should seem further that there was reasonable grounds for their desire to eliminate any risk of loss of their expectancy in their mother's estate, in view of the fact that she was then living and had lived in the home of William Gordon Miller, and, to all appearances, might then be expected to continue to live with him until the date of her death. The contract of appellee that at the death of Mrs. E. R. Miller the land in controversy "shall be partitioned between the five of us (and the heirs, if any, of any one or more which may be deceased) equally, and that in such partition I will make no claim whatsoever for or on account of improvements now or hereafter erected, constructed or made on said property by me," and the further stipulation that "the provisions of this contract being expressly made for the benefit of my said sister and brothers, who, together with myself, will inherit my said mother's estate at her decease," clearly constituted an executory contract on the part of appellee, supported by a valuable consideration, that plaintiffs should, as between the parties to the instrument, be vested each with title to an undivided one-fifth interest in a one-half interest in the two tracts of land described in the contract.

[3] In order to perform his contract to partition the property between the parties as stipulated, it would have been necessary for all parties to execute a deed, or deeds, by the terms of which there would be conveyed to each by the others the portion allotted to him. Such a deed would imply a warranty of title by the grantors to the grantee by operation of law. James v. Adams, 64 Tex. 195, and authorities there cited. Hence appellee's contract for such a partition implied a further contract to warrant to appellants title to their respective interests. But aside from that conclusion, appellee's contract was, at all events, to the effect that he would relinquish or assign to appellants all claim by him of title to the undivided interests in the land stipulated in the contract.

[4] There is no magic in the term "warranty" as applied to a deed of conveyance. It is employed merely to designate the contract of the vendor, which, solely because it is a contract, operates to pass to the vendee a title outstanding against the property at the time of the conveyance whenever the same is acquired by the grantor thereafter. It is of no higher dignity than the contract of appellee in this suit, upon which the action is based, and if the latter is enforced, it will operate to convey appellee's after-acquired legal title, even though it should be held that the contract was simply an agreement on the part of appellee to relinquish to appellants by quitclaim deed the interests sued for. Jordon v. Abney, 97 Tex. 296, 78 S. W. 486; Clendening v. Wyatt, 54 Kan. 523, 38 P. 792, 33 L. R. A. 278; McAdams v. Bailey, 169 Ind. 518, 82 N. E. 1057, 13 L. R. A. (N. S.) 1003, 124 Am. St. Rep. 240; Thornton v. Louch, 297 Ill. 204, 130 N. E. 467; Hoyt v. Hoyt, 61 Vt. 413, 18 A. 313; In re Wickersham's Estate, 153 Cal. 603, 96 P. 311; Edler v. Frazier, 174 Iowa, 46, 156 N. W. 182; 2 Storey on Equity Jurisprudence, § 1074.

[5] Even though it should be said that for lack of uncertainty and indefiniteness in appellee's contract as to whether or not he obligated himself to convey or relinquish to them the specified interests upon the death of their mother, an action would not lie to compel specific performance, nevertheless appellants were entitled to recover on the theory of equitable estoppel, since it would clearly be inequitable and contrary to the principles of honesty and fair dealing for the appellee to acquire and hold title to the property which he had contracted should belong to the appellants; and, under such circumstances, he is in equity regarded as holding the legal title in trust for the benefit of appellants. Kuehn v. Kuehn (Tex. Civ. App.) 232 S. W. 918; Hendrix v. Nunn, 46 Tex. 141; Home Investment Co. v. Strange, 109 Tex. 342, 195 S. W. 849, 204 S. W. 314, 207 S. W. 307; Gilean v. Witherspoon (Tex. Civ. App.) 121 S. W. 909; Chandler v. Riley (Tex. Civ. App.) 210 S. W. 716; Jordon v. Abney, 97 Tex. 296, 78 S. W. 486; 21 Corpus Juris, p. 1073; Howard v. Brown, 197 Mo. 36, 95 S. W. 191.

[6, 7] Nor was there any merit in the defense of appellants' suit based on the statute of four years' limitation. Mrs. E. R. Miller died on July 16, 1919, and this suit was filed July 12, 1921, which was less than two years from the date of her death. Appellants' cause of action, therefore, did not accrue until the date of their mother's death,

and therefore the statute of limitation, which expressly fixes the date of accrual of the cause of action as the beginning of limitation, did not support the plea. Furthermore, although the deed from Mrs. E. R. Miller in favor of appellee was duly recorded on September 4, 1915, and he held possession thereunder from that date until the date of the death of his mother under claim of title, such possession could not, in any event, support his plea, since in holding the legal title such possession was not inconsistent with his contract that the interests claimed by appellants should vest in them on his mother's death, and since he occupied the position of trustee for appellants' benefit and gave no notice to them that he had repudiated the trust and had elected to hold the property adversely to them.

Accordingly, the judgment of the trial court is reversed, and judgment is here rendered in favor of appellants for a recovery of the property sued for; but since the same consists of undivided interests, the cause is remanded for the purpose of partition of the two tracts described in the contract in accordance with the statutes in such cases made and provided, as prayed for by appellants in their pleading.

### On Motion for Rehearing.

In the disposition made of this case upon original hearing we overlooked appellants' claim for rents asserted in their pleadings. As shown in the opinion heretofore filed, the jury found that the average cash rental value of the land in controversy for the five years beginning with the year 1920 and ending with the year 1924 was $2 per acre per annum. The evidence showed without controversy that there was an aggregate of 260 acres of land in the two tracts in controversy, and appellants have been awarded a recovery of an undivided three-fifths of their mother's one-half interest in those two tracts, which would be equal to 78 acres. An aggregate of $10 per acre rental on the 78 acres is equal to $780, for which William Gordon Miller is indebted to appellants for rents less three-fifths of one-half, or three-tenths, of the taxes paid by him on the land during those years, and the record shows without controversy that the total taxes paid by him during those years on the 260 acres was $442.53, three-tenths of which sum is $132.75. That amount deducted from $780 leaves a balance of $647.-25, for which judgment is here rendered in favor of appellants against appellee, in addition to the judgment heretofore rendered by this court in appellants' favor for an undivided three-fifths of one-half of the 260 acres of land described in plaintiffs' petition.

### On Further Motion for Rehearing.

[8, 9] It is undoubtedly true that if a tract of land is partitioned between several parties owning an undivided interest therein, derived from the same source of title, and title to the whole fails, then there is no warranty of title in favor of any of the parties to whom allotments are made as against an outstanding title superior to the title partitioned, since no consideration passes to any of the parties to the partition. But if title to only a portion of the property partitioned fails by reason of a superior outstanding title, then the party losing thereby is entitled to contribution from other parties to the partition, upon the theory of an implied warranty of title from them, since the party losing has surrendered to the others a valuable consideration in his undivided interest in the remainder of the property, title to which is valid. That was the basis of the decision in James v. Adams, 64 Tex. 195, cited in our opinion on original hearing. The decision in Chace v. Gregg, 88 Tex. 552, 32 S. W. 520, and other decisions cited and stressed by appellee, are not in conflict with that decision. Indeed, in Chace v. Gregg, while it was held that the deed of partition therein discussed, containing a warranty of title, did not estop the warrantor from claiming under an after-acquired title, yet it was specifically pointed out that no valuable consideration had passed to the party against whom the estoppel was invoked, since the title partitioned was void in its entirety and no one received any benefits from the partition deed, and there was no other consideration passing to the warrantor.

[10] In the present suit, it conclusively appears that the appellants paid a valuable consideration to the appellee William Gordon Miller, for the latter's contract to partition the property in controversy between all parties after the mother's death, and if the contract had been a deed of partition between the parties, executed after the mother's death, then the decision in James v. Adams, supra, would have been applicable, as pointed out in our original opinion. That observation was made in answer to the point so insistently urged by the appellees that the contract between the parties was nothing more than a quitclaim deed from appellee which did not imply a warranty of title, and therefore did not estop William Gordon Miller from asserting the after-acquired legal title from his mother. However, as shown in the original opinion, we specifically held that the contract which was made the basis of appellants' suit was not a present quitclaim deed nor a present deed of partition, but was a contract binding the defendant William Gordon Miller to a partition of the property between the several heirs in proportions therein stated, after their mother's death, and was supported by a valuable consideration passing to the defendant. That contract, under the clearest principles of equity and fair dealing, operates as an estoppel against the defendant William Gordon Miller to assert the after-acquired legal title as against the plaintiffs, since the

assertion of such title was contrary to and in violation of the plain terms and the express purpose of the contract. Furthermore, the defendant asserted the same as a defense to plaintiffs' suit without even tendering back to plaintiffs the title which they conveyed to him in the remainder of the tract of land as a consideration for the contract. 21 C. J. 1110, 1111; 10 R. C. L. p. 799.

Decisions to the effect that a present quit-claim deed does not operate to pass a superior or outstanding title thereafter acquired by the vender have no proper application to this case, since appellee's contract to partition the property was essentially an agreement by him that upon the death of his mother he would convey to appellants the title he should then own in the portions of the property allotted to appellants, which necessarily included the legal title acquired from his mother, prior to the maturity of his obligation to partition. And since appellants had already paid to appellee a valuable consideration for his contract, an equitable title to all his interest in the portions of the property he agreed should pass to appellants became vested in them upon the death of their mother. Vardeman v. Lawson, 17 Tex. 11; 1 Pom. Eq. Jur. §§ 368 and 373.

Appellee's motion for rehearing is overruled.