## FRINT et al. v. TATE et al.

### No. 5371.

Court of Civil Appeals of Texas. Amarillo.
April 27, 1942.

Rehearing Denied June 1, 1942.

J. W. Spivey, Jr., of Borger, and W. L. McConnell, of Panhandle, for appellants.

James Spiller, of Panhandle, and Curtis Douglass, of Pampa, for appellees.

STOKES, Justice.

The record in this case reveals that S. Crum and his wife, Susan Crum, owned the east half of Section 78, Block 7, I. & G. N. Railway Company Surveys, consisting of 320 acres, and the southwest quarter of Section 17, Block M-4, Gibson Survey, consisting of 160 acres, all located in Carson County. On August 24, 1934, at Belleville, Kansas, where appellants resided, S. Crum and his wife, in consideration of love and affection, executed and delivered to appellant, Mrs. Frint, a deed by which they conveyed to her the 320-acre tract, and shortly thereafter, for a like consideration, they executed a deed by which they conveyed to P. I. Crum the southwest quarter of Section 17. The appellant, Mrs. Frint, and appellees, Mrs. Tate, Mrs. Thomas and Mrs. Vance, are daughters, and P. I. Crum is the son, of S. Crum and wife, Susan Crum, and the five constitute all of their children.

On August 4, 1934, before either of the deeds was executed, appellee, P. I. Crum, wrote a letter to appellant, Mrs. Frint, in which he explained to her that in his opinion their father, S. Crum, had become incapable of attending to his business affairs; that the father had approached him in a sort of hysterical frame of mind and asked him if it would be all right with him if the father conveyed the half section of 320 acres to Mrs. Frint. The letter shows he had some conversation with his father concerning the matter in which the father appeared to be in great distress concerning the land and in fear that F. A. Tate, his son-in-law, would in some manner procure the title to it. In the letter he told Mrs. Frint also that their father expressed the desire to convey to him, that is, P. I. Crum, the southwest quarter of Section 17, and expressed to her the opinion that it would be a great relief to the father's mind if he should convey the land as suggested by him, and he proposed to her that the father be permitted to go ahead and do so. He said in the letter that if such conveyances were made, the children could later get together and make an equal division of the property, and requested her to reply as soon as possible in order that the others might know how to proceed in the matter. Mrs. Frint replied to the letter on August 6, 1934, and expressed the opinion that it would be better to persuade the father to retain the property until his death, but, she wrote, if he was determined to dispose of the title in the manner mentioned by Mr. Crum in his letter, then the children could get together later and make proper settlement. She said, also, that she felt the other girls should have their shares and that, for her own part, she wanted them to participate in the property in accordance with what their fair shares would be.

The record further shows that shortly before this correspondence, the home of the aged parents at Panhandle in Carson County was destroyed by fire, and a short time after the letters were written they went to Belleville, Kansas on a visit to appellants, Mrs. Frint and her husband, where they remained for several weeks. During the time they were on this visit, S. Crum and his wife executed the deed by which they conveyed to Mrs. Frint the 320-acre tract, and shortly thereafter they executed the deed by which they conveyed to P. I. Crum the southwest quarter of Section 17. It seems that Mrs. Frint managed and controlled the 320 acres until the death of the parents which occurred some two years later, but that the rents and revenues were devoted to their sustenance and support. S. Crum died February 22, 1936, and his wife died in September of the same year. In December, 1934, Mrs. Frint made a visit to her brother and sisters in Carson County during which the matter of making a partition of the land equally among the five children was discussed, and appellant, Mrs. Frint, indicated she would be willing to sign a contract to that effect. After she returned to her home, Mrs. Tate and P. I. Crum caused a contract to be drawn by which Mr. Crum and Mrs. Frint would acknowledge they held the two tracts of land in trust to be divided equally among the five children after the death of the father, S. Crum. P. I. Crum signed the contract and sent it to Mrs. Frint with the request that she and her husband execute it. This she refused to do upon the ground, as stated by her, that it was too long. She said that when she told Mr. Tate she would sign a contract she did not expect it to be so extensive as the one forwarded to her appeared to be. She said, furthermore, that the con-

tract made no provision for their mother, who might outlive the father, and that she was not willing to make partition of the land while either of the parents was living.

Not being able to induce Mrs. Frint to make partition of the land, Mrs. Tate instituted this suit in the nature of trespass to try title against all of the other heirs of S. Crum and his wife, and in addition to the usual form of such an action she set up an expressed trust alleging the facts which culminated in the execution of the two deeds by the parents and that Mrs. Frint and P. I. Crum did not procure the equitable titles, but were trustees holding the lands in trust to be divided equally among the five children after the death of the parents. She also alleged that her father, S. Crum, was of unsound mind and incapable of understanding the nature and effect of the transactions when he executed the deeds.

Appellants, Mrs. Frint and her husband, answered by a plea of not guilty, general denial, and pleaded the three years' statute of limitations. The other defendants, who appear here as appellees, answered by appropriate pleadings to the effect that each of the five children owned an equal interest in the land and prayed for relief accordingly.

The case was submitted to a jury upon two special issues, in answer to which the jury found that appellant, Mrs. Frint, agreed with P. I. Crum and Mrs. Tate to hold the 320 acres under the deed from her father in trust for the equal use and benefit of herself and the four other children. They further found that the father, S. Crum, had mental capacity to understand that he was parting with the title and was vesting the same in Mrs. Frint at the time he executed the deed conveying the 320 acres to her. Based upon the verdict of the jury, the court rendered judgment decreeing that Mrs. Frint and P. I. Crum held the lands in trust for themselves and the other children, and establishing the title in them, respectively, for an undivided one-fifth interest therein.

Mrs. Frint and her husband have perfected an appeal from the judgment, and contend that the court erred in refusing to grant their motion for a peremptory instruction because, they assert, no trust was established by the evidence.

No question is raised in the appeal as to the nature of the deed by which P. I. Crum procured from his father the southwest quarter of Section 17. He admitted that he held the land in trust for himself and the other children, and exhibited a willingness that the title be decreed to them in equal proportions. He has not appealed nor filed cross assignments of error.

■ We think the correspondence between P. I. Crum and Mrs. Frint established an intention of the parties to create an express trust and that Mrs. Frint held the 320 acres and P. I. Crum held the southwest quarter of Section 17 in trust as alleged by Mrs. Tate in her pleading. Christopher et al. v. Davis et al., Tex.Civ. App., 284 S.W. 253; Moseley v. Fikes, Tex.Civ.App., 126 S.W.2d 589; Fikes v. Moseley, 136 Tex. 386, 151 S.W.2d 202. The record shows that S. Crum was eighty-seven years of age at the time the matter was being discussed between the parties and that his mental and physical capacities were failing. An incident which happened a few years prior to the time the correspondence was conducted caused him to have an abiding antipathy for his son-in-law, F. A. Tate, and the statements made by P. I. Crum in his letter to Mrs. Frint concerning the state of the father's mind and his hallucinations that F. A. Tate or some other person would in some manner take his property from him, and that these delusions were causing him great worry and distress of mind are undisputed by any testimony. In the reply to her brother's letter Mrs. Frint suggested that their father be persuaded to retain the title as long as he lived, but, she said, if he was determined to convey the land to her and her brother, the children could get together later and adjust the matter. She said, also, she desired that the other girls have their fair shares of the property. The deed was executed by her father, conveying the land to her, some three weeks after this letter was written. In December, 1934, Mrs. Frint made a visit to her brother and sisters in Carson County and the testimony shows she acknowledged then that she held the land only in trust for herself and her brother and sisters, and agreed to enter into some kind of a contract by which the trust would be acknowledged. We think these circumstances, together with other admissions made by her in her testimony are amply sufficient to support

the verdict of the jury and to establish the fact that she took the title in trust as alleged in the plaintiffs' pleading. We are of the opinion, also, that the agreement was based upon an adequate consideration. The anxiety of Mrs. Frint and her brother concerning the distress and worry that was being occasioned their father by the fear which he entertained that someone would take his property from him, and the relief afforded him by easing his mind in that respect were alone a sufficient consideration for the trust agreement, but in addition to that, Mrs. Frint assured herself of a one-fifth interest in the southwest quarter of Section 17, which it was contemplated would be conveyed to her brother, P. I. Crum, and of which she would have been deprived if the deeds had been absolute as now contended by her. The fact that it was smaller in area than the interest she would otherwise have gained in the 320-acre tract is not important.

Appellants assert that a trust such as appellees contend was created by the transactions mentioned must have its origin simultaneously with the execution of the conveyance and can not be created except by the intention of the grantor therein. The rule that the trust must arise simultaneously with the conveyance applies only to resulting trusts and not to express trusts like that involved in this case. Temple et al. v. City of Coleman, Tex.Civ.App., 245 S.W. 264; Henderson et al. v. Rushing et al., 47 Tex.Civ.App. 485, 105 S.W. 840; Smalley et al. v. Paine et al., 62 Tex.Civ. App. 52, 130 S.W. 739. Even if it applied to expressed trusts, however, the contention would be beside the point here because the trust involved in this case did arise simultaneously with the execution of the deed by S. Crum and his wife in which they conveyed the land to Mrs. Frint. Indeed, that was the culmination of the trust agreement theretofore made between Mrs. Frint and her brother, P. I. Crum, who was representing the other sisters as well as himself.

We are not impressed with the contention that no such trust can be created without the conscious intention of the grantor in the deed. Miller et al. v. Miller et al., Tex.Civ.App., 283 S.W. 1085. In the cited case the heirs of Mrs. Miller, before her death and without her knowledge, entered into a contract whereby they agreed to a distribution or adjustment of their expectancies in her estate which consisted of her community interest in certain lands. After the contract was executed W. G. Miller, one of the children, procured from her a deed to her interest in the land and she also executed her last will and testament by which she bequeathed it to him. After her death the other children brought suit against W. G. Miller in which they sought to establish an express trust very similar to that involved in this case. The court held that even though the mother had no notice of the contract and although the contract was not such as could be specifically enforced because of uncertainty, it was supported by adequate consideration and an action would lie in favor of the plaintiffs since it would be inequitable and contrary to honesty and fair dealing for W. G. Miller to hold the title to the property which he had contracted should belong to the appellants and that under the circumstances W. G. Miller was, in equity, regarded as holding the legal title in trust for the benefit of himself and the other heirs of their mother.

We find nothing in the record nor in the contract which would destroy its binding force or prevent it from being effective as a trust agreement. While it is true that Mrs. Frint's husband did not join her in executing the contract, his failure to do so did not affect its binding force because it did not involve the conveyance by Mrs. Frint of any interest owned or held by her in the land involved. Crouch v. Crouch et al., 30 Tex. Civ.App. 288, 70 S.W. 595; Cowan v. Brett et al., 43 Tex.Civ.App. 569, 97 S.W. 330, 331; Betts v. Simons, Tex.Civ.App., 35 S.W. 50; Speer's Law of Marital Rights, p. 402, par. 325. It is not contended that she bound herself to convey her interest in the land to the other heirs. The contract amounted only to an agreement on her part to take the title under a deed from her father and hold it in trust to be thereafter divided between her and her brother and sisters. In other words, she agreed only to become a trustee, and it has long been held by the courts of this State that a married woman may be a trustee and hold title to land in trust for the use and benefit of other persons. Smith et al. v. Strahan, 16 Tex. 314, 67 Am.Dec. 622; Dickson v. Strickland, 114 Tex. 176, 265 S.W. 1012; Speer's Law of Marital Rights, p. 404, par. 327.

Appellants urge with much earnestness that a parol trust can be established only by evidence which is clear and convincing, and that without such evidence the courts will not recognize such a trust. The expressed trust under which Mrs. Frint held the title to the land involved in this case was not a parol trust. It was established by the letters written to Mrs. Frint by her brother and her replies thereto. Moreover, it was not only clear and convincing, but was not controverted by the testimony of any witness. Mrs. Frint acknowledged writing the letters, and we think her letters alone were sufficient to reveal her purpose and intention to take the title to the land in trust as alleged by the plaintiffs in the case. Wallace et al. v. Pruitt et al., 1 Tex.Civ.App. 231, 20 S.W. 728.

We find no merit in these contentions of appellants and their assignments of error in relation thereto will be overruled.

Appellants next contend that the court erred in overruling their exceptions to special issue No. 1 submitted to the jury. The special issue required the jury to find whether or not Mrs. Frint agreed with P. I. Crum and Mrs. Tate to hold the 320 acres in trust for the equal use and benefit of Mrs. Frint and her brother and sisters. Appellants contend that the court should have required the jury to find the exact time when such agreement was made. It is plain that the special issue referred to the agreement made between Mrs. Frint and P. I. Crum through the correspondence had between them. Those letters also reveal that Mrs. Tate was conducting a similar correspondence with Mrs. Frint, and the special issue specifically referred to the alleged agreement between Mrs. Frint and P. I. Crum and Mrs. Tate. Since the record does not reveal any other agreement and no witness testified concerning any agreement other than that which was made by the correspondence between these parties, the jury could not have been confused and could not have based their answer upon any agreement other than that which took place before Mrs. Frint received the deed from her father.

We have carefully considered all of the assignments of error and propositions presented by appellants, and, in our opinion, none of them reveals reversible error. The judgment of the court below will therefore be affirmed.